Citation Nr: 1808263 
Decision Date: 02/08/18 Archive Date: 02/20/18

DOCKET NO. 13-02 196 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas


THE ISSUE

Entitlement to an evaluation higher than 10 percent prior to May 8, 2014 and higher than 20 percent on and after that date for service-connected duodenal ulcer with spastic duodenal bulb.


REPRESENTATION

Veteran represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

C. Smith, Associate Counsel
INTRODUCTION

The Veteran served on active duty in the U.S. Air Force from October 1960 until October 1961. This case comes to the Board of Veterans' Appeals on appeal from 2013 rating actions of VA Pension Management Center.

In November 2017, the Veteran testified at a hearing before the undersigned Veterans Law Judge (VLJ). A transcript of the proceedings has been associated with the claims file.

In a September 2015 rating decision, the RO increased the disability evaluation for the Veteran's service-connected duodenal ulcer from 10 percent to 20 percent effective May 8, 2014. As higher evaluations are available both prior to and following May 8, 2014, the issue of entitlement to a higher evaluation for the entire period on appeal remains. See AB v. Brown, 6 Vet. App. 35, 38 (1998). 

The appeal was previously remanded by the Board in March 2015 and January 2017, and has since been returned for further appellate review.


FINDING OF FACT

For the entire period on appeal, the Veteran's duodenal ulcer was manifested by moderate symptoms.


CONCLUSIONS OF LAW

1. The criteria for an evaluation of 20 percent for duodenal ulcer prior to May 8, 2014 are met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 4.7, 4.114, Diagnostic Code 7305 (2017).

2. The criteria for a rating in excess of 20 percent for duodenal ulcer on and after May 8, 2014 are not met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 4.7, 4.114, Diagnostic Code 7305 (2017).


REASONS AND BASES FOR FINDING AND CONCLUSIONS

Duties to Notify and Assist

VA has a duty to notify and a duty to assist claimants in substantiating a claim for VA benefits. 38 U.S.C. §§ 5103, 5103A (2012); 38 C.F.R. §§ 3.159, 3.326(a) (2017). VA's duty to notify was satisfied by a RO letter dated August 2009. There is no indication in this record of a failure to notify. See Scott v. McDonald, 789 F.3rd 1375 (Fed. Cir. 2015).

With regard to the duty to assist, the Veteran's service treatment records (STRs) are associated with the claims file, as are VA and private medical records. The Board finds that the VA opinions and rating examination obtained in this case are adequate, as they provided opinions, considered the pertinent evidence of record, included an examination of the Veteran, and elicited subjective complaints from the Veteran. The Board notes that the May 2017 examiner indicated diagnostic testing was going to be conducted in connection with the examination report, and the record does not contain any additional diagnostic tests. The 2017 examination report nevertheless contains all information necessary to rate the disability based on the Veteran's symptomatology. Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination or opinion has been met.

The Veteran also offered testimony before the undersigned VLJ at a Board hearing in May 2014. The Board finds that all requirements for hearing officers have been met. 38 C.F.R. § 3.103(c)(2) (2017); Bryant v. Shinseki, 23 Vet. App. 488 (2010). To the extent that any evidentiary deficiency was noted, the Board finds that it has been cured on remand.

The Board finds that there has been substantial compliance with its March 2015 and January 2017 remand instructions. D'Aries v. Peake, 22 Vet. App. 97, 105 (2008). In the March 2015 remand, the Board directed the AOJ to undertake reasonable efforts to obtain outstanding treatment records from Brooks Family Practice Clinic (BFC), to obtain outstanding VA treatment records, and to afford the Veteran another VA examination. The matter was again remanded in January 2017 to again undertake efforts to retrieve private treatment records and to afford the Veteran another VA examination. In January 2017, VA wrote to the Veteran requesting that he complete the necessary authorization forms to allow VA to request private treatment records from BFC. In a February 2017 response, the Veteran provided the completed authorization form for BFC along with a written note that he received treatment there from 2003 through 2010. A February 2017 report of contact documented that the BFC was out of business and they were unable to reach the provider at the phone number listed. Another February 2017 report of contact documented that the records in the possession of Dr. AM were destroyed following a 5 year retention period. The Veteran was made aware of the unavailability of these records in the August 2017 supplemental statement of the case. Thus, reasonable efforts were undertaken to obtain the outstanding treatment records. VA examinations were conducted in July 2015 and May 2017. The remand directives have thus been met.

Increased Evaluations

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Schedule), found in 38 C.F.R. Part 4 (2017). The Schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service. The ratings are intended to compensate, as far as can practicably be determined, the average impairment of earning capacity resulting from such diseases and injuries and their residual conditions in civilian occupations. 38 U.S.C. § 1155; 38 C.F.R. 
§ 4.1 (2017). When there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2017). When reasonable doubt arises as to the degree of disability, such doubt will be resolved in the Veteran's favor. 38 C.F.R. § 4.3 (2017). 

In considering the severity of a disability, it is essential to trace the medical history of the Veteran. 38 C.F.R. §§ 4.1, 4.2, 4.41 (2017). Consideration of the whole-recorded history is necessary so that a rating may accurately reflect the elements of any disability present. 38 C.F.R. § 4.2; Peyton v. Derwinski, 1 Vet. App. 282 (1991). Although the regulations do not give past medical reports precedence over current findings, the Board is to consider the Veteran's medical history in determining the applicability of a higher rating for the entire period in which the appeal has been pending. Powell v. West, 13 Vet. App. 31, 34 (1999). 

Where entitlement to compensation has been established and an increase in the disability rating is at issue, the present level of disability is of primary concern. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). If later evidence indicates that the degree of disability increased or decreased following the assignment of the initial rating, staged ratings may be assigned for separate periods of time. Id.

The Veteran's duodenal ulcer is rated at 38 C.F.R. § 4.114 Diagnostic Code (DC) 7305 (2017). Under that DC, a duodenal ulcer is assigned a 10 percent evaluation for a mild ulcer with recurring symptoms once or twice yearly. A 20 percent evaluation is assigned for a moderate ulcer with recurring episodes of severe symptoms two or three times a year averaging ten days in duration; or with continuous moderate manifestations. A 40 percent rating is assigned for a moderately severe ulcer, which is less than severe but with impairment of health manifested by anemia and weight loss; or recurrent incapacitating episodes averaging 10 days or more in duration at least four or more times a year. A 60 percent evaluation is warranted for a severe ulcer with pain only partially relieved by standard ulcer therapy, periodic vomiting, recurrent hematemesis or melena, with manifestations of anemia and weight loss productive of definite impairment of health.

In a May 2014 statement, the Veteran withdrew his appeal for entitlement to service-connection for diverticulitis status post colostomy/colectomy as secondary to service-connected duodenal ulcer. A 2010 VA examiner indicated that the Veteran's nonservice-connected colon disorder was characterized by chronic abdominal pain and altered bowel habits, which are also symptoms contemplated in the rating criteria for duodenal ulcer. When the manifestations of a service-connected disability cannot be separated from a nonservice-connected condition, all manifestations must be attributed to the service-connected disability. Mittleider v. West, 11 Vet. App. 181, 182 (1998). This is done herein.

In December 2006, the Veteran underwent emergency surgery for a perforated diverticulitis and had a colectomy and colostomy, with closure of the colostomy in July 2007. A December 2007 VA treatment record documented the Veteran had no current gastrointestinal issues on his current medication. The Veteran stated he was doing "remarkably well" after his 2007 surgery. A December 2008 VA primary care note documented the Veteran had developed loose stools with cramping for two days. There was no associated blood in stools, nausea, vomiting, or dark stools. The assessment was gastroenteritis. Another December 2008 note reported the Veteran had achiness in his abdomen at the incisional site and diarrhea for one week. A January 2009 VA primary care note documented the Veteran's defecation pattern had returned to normal. 

Private treatment records from August 2009 from Dr. AM document the Veteran presented to establish care with a new primary care physician, and gave a history of stomach ulcers and partial colon removal. In September 2009, the Veteran continued to complain of abdominal pain; but not nausea, vomiting, constipation, or blood. At an October 2009 appointment, the Veteran also denied abdominal pain. 

In August 2009 the Veteran underwent a VA examination. At that time the Veteran reported symptoms of nausea, bloody stools, diarrhea, constipation, and mid abdominal pain. The Veteran took prescription antacids to manage his symptoms, and reported a good response without side effects. There were no hospitalizations or surgeries related to the Veteran's duodenal ulcer with spastic duodenal bulb. The Veteran denied having been prescribed bed rest within the last 12 months due to stomach or duodenal disease. There were no signs of weight gain, weight loss, or signs of anemia. The examiner indicated the Veteran's duodenal ulcer resulted in only mild effects on the Veteran's usual occupation and daily activities. 

An October 2009 private record documented the Veteran had chronic diarrhea associated with the colostomy.

The Veteran underwent a VA examination in March 2010. The Veteran reported complaints of sharp, diffuse abdominal pain increased after eating certain foods and improved by antacids. He reported taking over the counter medication as needed. He described a pattern of constipation alternating with diarrhea, with some dark or green stools twice a week. He reported occasionally feeling nauseated, but no vomiting or hematemesis. The examiner noted there was no documented gastrointestinal bleeding. The examiner further reported the Veteran had a history of perforated diverticulitis in December 2006 with colostomy and colostomy closure in July 2007, which was complicated by a subphrenic abscess that was drained percutaneously. The Veteran had not experienced any periods of incapacitation due to stomach or duodenal disease, and the condition had minimal effects of his occupational functioning and activities of daily living. The Veteran's weight had been stable fluctuating between 220 and 226 pounds over the past 2 years. On examination, the Veteran's abdomen was soft, non-tender, and non-distended. There was no hepatosplenomegaly, and bowel sounds were normal. There was a laparectomy scar and a horizontal scar in the left upper quadrant. The Veteran did not have signs of anemia. The examiner diagnosed peptic ulcer disease and irritable bowel syndrome. The examiner explained that irritable bowel syndrome was a gastrointestinal syndrome characterized by chronic abdominal pain and altered bowel habits in the absence of an organic cause, that was by definition not attributable to the Veteran's peptic ulcer disease. 

In July 2010, the Veteran wrote that due to his ulcer condition, he had flare-ups of pain, chronic bleeding, and severe cramps. He wrote that his symptoms occurred an average of three times per week, more than the average 10 days duration contemplated by the 40 percent rating criteria for moderately severe duodenal ulcer. The Veteran also clarified that he had stopped taking the medication prescribed for his condition because of side effects of nervousness, lack of sleep, headaches, dry mouth, flushing, and severe stomach cramps.

In January 2011, the Veteran's physician from BFC wrote that the Veteran had abdominal pain secondary to ulcers and hypertension. Dr. CB opined that the recent loss of a significant portion of the Veteran's colon and subsequent complications had aggravated the Veteran's ulcerative condition. Dr. CB wrote that he saw the Veteran on an as needed basis.

At the August 2011 DRO hearing, the Veteran reported chronic indigestion, stomach pain, and regular constipation. He said he was unable to maintain water or moisture in his stomach due to the removal of a portion of his colon, which caused the pain. At that time, he stated that he received treatment for his stomach conditions through the VA Fort Worth medical center since his 2007 surgery. Additionally, he was on a doctor prescribed restricted diet. Due to his colostomy surgery, he wrote that he had pain, nausea, vomiting, and weight loss. He reported he probably had lost 15 pounds over the course of the past year.

A February 2011 VA primary care note documented the Veteran had mild tenderness in the epigastrium. He reported vomiting and upset stomach for two days, and abdominal cramping among other non-abdominal related symptoms. The assessment was sinusitis. At an April 2011 VA appointment the Veteran reported regular abdominal pain and indigestion. He reported the pain had been present off and on for a long time. 

In June 2011 the Veteran underwent a medical assessment and physical exam as part of an inpatient psychiatric hospitalization. At that time the Veteran denied unexplained weight loss, nausea, vomiting, abdominal pain, diarrhea, constipation, black stools, or blood per rectum. The Veteran's weight data was reviewed and his weight overall had been stable for the past year, although the Veteran reported a loss of 9 pounds since February 2011. No anemia was noted. Later that month, a June 2011 VA treatment note documented the Veteran continued to report problems with abdominal pain and indigestion. He rated his abdominal pain at a 4 on a pain scale of 1 to 10. A June 2011 VA nutritional assessment reported the Veteran's usual weight was 230 pounds, his target weight was 173 pounds, and his current weight was 235 pounds. 

In his substantive appeal, the Veteran stated that his duodenal ulcer had gotten progressively worse since 2007, and that he vomited blood and had blood in his stool. In an August 2013 submission, the Veteran stated that the severity of his disability had been underestimated because he did not seek treatment every time he had episodes of pain, bleeding, and weakness from not being able to eat a sufficient amount of food. He reported that the medication did not relieve his symptoms 77 percent of the time and that his ulcer condition had been aggravated by his colon surgery.

In November 2013, the Veteran's representative asserted that the Veteran's duodenal ulcer caused constant pain, weakness, and bleeding.

At the May 2014 Board hearing, the Veteran testified that currently took over the counter medication for his ulcer. He reported constant heartburn, that he spit up blood, and had blood in his stool several times a week. The Veteran reported he had never been diagnosed with anemia. He did report periodic episodes of weight loss, and that he had to watch what he ate because many foods upset his stomach. He reported episodes of nausea and vomiting. When asked whether he was prescribed bed rest for his ulcer, the Veteran answered yes, "[i]t's happened a lot more recently, and partially I guess, because of my age. I don't know whether that's what it is or not, because of my age, they suggest a lot more bed rest." He reported that he had at least four episodes of bed rest over the past year that probably lasted an average of 10 days total or more. He reported that because of his ulcer, he could not lift certain amounts, bend over, and that doctors had told him he should no longer ride horses. The Veteran clarified that bed rest was prescribed by his private doctor at BFC. The Veteran's representative summarized the Veteran's symptoms as follows: "recurring incapacitating episodes, averaging ten days or more in duration, at least four times or more a year, in addition to abdominal pain with periodic relief with standard ulcer therapy, periodic vomiting, recurrent hematemesis and melena."

At a November 2014 VA appointment, the Veteran reported experiencing abdominal pain rated at a 7 on a scale of 1 to 10. The pain had lasted less than a week and was worsened with eating. The pain affected sleep, physical activity, and concentration. He also reported some nausea and vomiting, the assessment was gastritis and the Veteran was given ranitidine. 

A July 2015 VA examination was conducted. The examiner reported the Veteran was diagnosed with a duodenal ulcer in service in 1961. The Veteran reported current symptoms of stomach cramping with cold water and many types of foods, with symptoms typically lasting a few hours at a time and frequently awaking him from sleep. He reported taking over the counter medication daily. He reported blood streaking in the morning when he coughed or vomited. The examiner reported the Veteran had recurring episodes of symptoms that were not severe that occurred 4 or more times per year that lasted less than 1 day. These symptoms included continuous abdominal pain relieved by standard ulcer therapy, and transient nausea and vomiting occurring 4 or more times per year and lasting less than 1 day. The Veteran also had mild episodes of hematemesis that occurred 4 or more times per year and lasted less than one year. The Veteran did not have incapacitating episodes due to signs or symptoms of any stomach or duodenum conditions, or any other pertinent physical findings.

At a December 2015 VA appointment the Veteran reported that he believed his stomach ulcer had returned, and that he was experiencing stomach cramps and dark stools. There was no frank blood in the toilet or stool. The Veteran requested a refill of his medication.
 
In the September 2016 appellant brief, the Veteran's representative argued that the evidence demonstrated the Veteran's symptoms occurred more than 4 times a year that included symptoms that are not severe, nausea, vomiting, hematemesis, and continuous abdominal pain. The representative argued that such symptomatology met at least the 40 percent criteria for moderately severe duodenal ulcer.

The Veteran denied bowel complaints in May 2016, July 2016, and December 2016, and his peptic ulcer disease was assessed as stable. The Veteran's abdomen was routinely non-tender, soft, obese, with positive bowel sounds, and non-distended.

The Veteran underwent another VA stomach and duodenal conditions examination in May 2017. The examiner noted the Veteran was status-post colostomy and closure of colostomy on July 2007, and most recently was seen in November 2014 for a stomach cramp. The Veteran was current prescribed medication as needed for symptoms. The examiner found that the Veteran did not demonstrate any signs or symptoms due to a stomach condition, did not have any incapacitating episodes due to signs or symptoms of a stomach disease, and did not have any other pertinent physical findings related to stomach conditions. The only symptom reported by the Veteran at the time of the examination was a change in stool color. The examiner noted that the Veteran had not reported any stomach symptoms to his primary care provider, and that his medication was expired on his medication list. 

The Board finds that overall, the Veteran's service-connected duodenal ulcer has warranted a 20 percent evaluation for the entire period on appeal but no higher. Private and VA treatment records show that prior to May 2014, the Veteran reported symptoms of intermittent abdominal pain, diarrhea, indigestion, and occasional vomiting and nausea. See December 2008 VA treatment record, see August 2009 through October 2009 private treatment records; see January 2011 letter from Dr. CB; see February 2011 VA primary care note. The 2009 and 2010 VA examinations documented the Veteran reported symptoms of nausea, bloody stools, diarrhea, constipation, and mild abdominal pain, dark or green stools twice a week. Those examiners characterized the Veteran's symptoms as mild and having a minimal impact on his occupational functioning and activities of daily living. The record indicates the Veteran's symptoms occur more frequently than once or twice yearly. The Board finds that such symptoms are more nearly contemplated by the 20 percent rating criteria for episodes of recurring symptoms 2 or 3 times a year averaging 10 days in duration. 

The Veteran's duodenal ulcer has not warranted an evaluation higher than 20 percent at any point during the appeal period. The preponderance of the evidence fails to show that the Veteran's duodenal ulcer causes impairment of health manifested by anemia and weight loss, or recurrent incapacitating episodes averaging 10 days or more in duration at least 4 or more times per year. The evidence does not demonstrate anemia and the Veteran denied being told he was anemic. Although the Veteran has reported periodic weight loss, VA treatment records generally note he is obese and the June 2011 nutritional assessment following the Veteran's reported weight loss documented the Veteran weighed 235 and his usual weight was 230. Also, although the Veteran reported incapacitating episodes and being prescribed bed rest for his condition, this is not supported by the objective medical evidence of record including both VA and private treatment records. The Veteran specifically reported being prescribed bed rest from Dr. CB at the BFC. While the treatment records from BFC could not be obtained, the January 2011 letter from Dr. CB only reported the Veteran was seen as needed for abdominal pain with no mention of incapacitating episodes or other symptoms. None of the VA examiners documented any incapacitating episodes. Ultimately, the Board places greater weight on the objective medical evidence of record demonstrating the Veteran's service-connected duodenal ulcer has not resulted in any incapacitating episodes with bed rest. In sum, the most probative evidence does not demonstrate anemia, weight loss, or incapacitating episodes contemplated by the 40 and 60 percent criteria.

The Board acknowledges that throughout the appeal, the Veteran has testified to experiencing periodic vomiting, bloody vomiting, bloody stools, and pain only partially relieved by standard ulcer therapy. See July 2010 and August 2013 statements from the Veteran; see May 2014 hearing testimony. Such symptoms are contemplated by the 60 percent rating criteria, but that rating criteria also requires anemia and weight loss productive of severe impairment of health. As noted above, the evidence does not establish anemia, weight loss, or periods of incapacitation. Also, VA treatment records document symptoms of less severity than reported by the Veteran in his 2010, 2013 and 2014 statements. For example, the Veteran denied symptoms of bloody stools in December 2008, September 2009, and June 2011. See December 2008 VA primary care note; see September 2009 Dr. AM record; see June 2011 VA medical assessment. While in August 2009 he told the VA examiner that he had bloody stools, the 2010 examiner documented there was no evidence of gastrointestinal bleeding and at that time the Veteran only noted dark or green stools. The Veteran also denied vomiting or hematemesis at the March 2010 and May 2017 VA examinations. The June 2015 examiner considered the Veteran's reported symptoms of hematemesis and assessed the episodes as mild, and the Veteran had no signs or symptoms due to a duodenal ulcer condition at the time of the 2017 examination. VA treatment records from 2016 onward show the Veteran regularly denied bowel symptoms and his duodenal ulcer was stable. In light of the inconsistencies between the Veteran's competent lay statements regarding the consistent severity of his symptoms and his symptom reporting in the context of receiving medical care, the Board will place greater weight on the objective medical evidence of record and findings of VA examiners as the Veteran's statements lack significant credibility. See Caluza v. Brown, 7 Vet. App. 498, 511 (1995) (noting that the credibility of a witness may be impeached by a showing of interest, bias, or inconsistent statements), aff'd, 78 F.3d 604 (Fed. Cir. 1996). In sum, the Board does not find the Veteran's reports of periodic vomiting, bloody vomiting, bloody stools, and pain only partially relieved by standard ulcer therapy sufficient to establish entitlement to an evaluation higher than 20 percent for service-connected duodenal ulcer. 


ORDER

Entitlement to a 20 percent evaluation for service-connected duodenal ulcer prior to May 8, 2014 is granted.

Entitlement to an evaluation higher than 20 percent for service-connected duodenal ulcer on and after May 8, 2014 is denied.




____________________________________________
K. MILLIKAN
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs