Pedro C. FRANCISCO, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 93–76.

United States Court of Veterans Appeals.

Argued Aug. 30, 1994.

Decided Sept. 27, 1994.

William D. Wallace, with whom Thomas P. Humphrey, Washington, DC, was on the brief, for appellant.

Alice M. Fent, with whom Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, and R. Randall Campbell, Deputy Asst. Gen. Counsel, Washington, DC, were on the brief, for appellee.

Before KRAMER, HOLDAWAY, and IVERS, Judges.

HOLDAWAY, Judge:

The appellant, Pedro C. Francisco, appeals a November 30, 1992, decision of the Board of Veterans' Appeals (BVA or Board) which denied an increased evaluation for residuals of a gunshot wound of the left shoulder, involving muscle group III, with total left shoulder arthroplasty, currently evaluated as 20% disabling. The Court affirms the Board's decision.

## FACTS

The appellant is a World War II combat veteran with recognized service as a guerrilla and a regular Philippine Army officer. The appellant was shot in the right hand in 1943 and in the left shoulder in 1945. In 1946, ten days after separation, he was accidentally shot in the right thigh. Service connection for the right thigh wound was denied in April 1949. In June 1949, the appellant was granted a 10% disability rating for gunshot residuals to his right hand. In September 1949, the appellant was granted a 20% disability rating for residuals of a gunshot wound to muscle group III of the left shoulder. This resulted in a combined disability rating of 30%.

In August 1962, the appellant claimed that his left shoulder disability had increased. In October 1962, the regional office (RO) deter-mined that the appellant's disability had not changed, and continued the 30% combined disability rating. The appellant again asked that his disabilities be "rerated" in October 1973. In October 1973, the RO informed appellant that the medical evidence did not indicate any change in the service-connected residuals of his wounds.

The appellant attempted to receive an increased disability rating again in 1983. The evidence in support of his claim included medical reports from the Long Beach VA Medical Center which indicated severe limitation of movement in his left shoulder and the right hand as well as advanced arthritis, both degenerative and traumatic in nature, at the glenohumeral articulation. In January 1984, the RO determined that this evidence did not warrant an increased disability rating. The appellant filed a Notice of Disagreement (NOD) in May 1984, and in May 1985, the Board denied the appellant's claim for an increased disability rating.

In November 1986, the appellant underwent a left total shoulder arthroplasty. The appellant requested an increased rating for his shoulder disability in January, April, and May 1987. In August 1987, the RO assigned a 100% disability rating for one year following the appellant's shoulder replacement, and confirmed the 30% combined disability rating to take effect thereafter. In February 1988, the 20% disability rating for the left shoulder wound was restored, and the appellant submitted an NOD. During a July 1988 orthopedic examination, the examining physician indicated that the appellant had no muscle strength in his left upper arm, could not lift his left arm to his beltline, and that the appellant had limited range of motion in his shoulder. The physician also noted that the appellant's right hand had residual weakness of the lumbrical muscles and of the hand grip, and limited range of adduction of the thumb. In December 1989, the Board determined that the appellant was not entitled to an increased disability rating.

In letters sent in January, March, and June 1990, the appellant protested the Board's decision, and his March 1990 letter was deemed a request for an increased disability rating. In July 1990, the appellant

submitted medical records which reported that the appellant suffered recurrent pain and limitation of movement of the left shoulder but did not contain any clinical findings with respect to the shoulder disability. In August 1990, the RO denied an increased rating, and the appellant filed an NOD in September 1990. In his VA Form 1–9 appeal filed in October 1990, the appellant limited his appeal before the Board to his claim for an increased rating for his shoulder disability. The appellant offered new facts regarding his 1946 gunshot wound to the thigh and requested reopening in letters dated September 1990, October 1991, November 1991, January 1992, and March 1992. In September 1991, the Board remanded the appellant's claim for the RO to obtain VA orthopedic and neurologic examinations determining the extent of the appellant's left shoulder impairment and to ascertain what benefits the appellant was seeking with respect to his 1946 gunshot wound to the thigh. Although the appellant explained the basis for his claim regarding his thigh wound in a Statement in Support of Claim dated July 1992, he reaffirmed that his appeal was limited to his residuals of a gunshot wound to the left shoulder. The Rating Board declined action regarding the thigh wound in July 1992, but stated that the appellant could submit affidavit evidence.

At the March 1992 orthopedic examination, the appellant said that pain over the joint had cleared but his muscle strength had decreased. He complained of left shoulder joint pains. The examiner found that the appellant had fair strength (defined as full range, gravity only resistance), maximum abduction of 90 degrees, pain and tenderness on abduction greater than 90 degrees, and good internal and external rotation (defined as full range, less than normal resistance). The examiner recorded muscle penetration of muscle group III, but did not specify any other muscle group involvement. The examiner's diagnosis was through-and-through gunshot wound and injury to muscle group III with stable left shoulder prosthesis. In March 1992, the appellant also received a neurological examination. The examiner found hypesthesia on the lateral aspect of the left arm and concluded there was no evidence of nerve injury.

In May 1992, the RO denied an increased rating. On November 30, 1992, the Board denied the appellant's claim for an increased rating for his left shoulder. The Board found that there was no basis for a rating solely under the neurologic criteria because the examiner specifically stated there was no nerve injury related to the gunshot wound. The Board also noted that during the March 1992 examination the appellant did not experience severe, painful motion or weakness as a result of the arthroplasty.

## ANALYSIS

As an initial matter, this Court notes that the only issue before it is whether the BVA erred in finding that the appellant was not entitled to an increased disability rating for his left shoulder. Apparently, the appellant was, or is, pursuing a previously denied claim regarding his 1946 gunshot wound to the thigh which occurred after demobilization. That claim was not part of this appeal, according to the appellant's Form 1–9 dated October 1990 and his Statement in Support of Claim dated July 1992. Since the claim was not addressed by the BVA in its November 1992 decision, this Court declines to address the issue. *See Allin v. Brown,* 6 Vet. App. 207, 213–14 (1994).

The Court reviews BVA factual findings under the "clearly erroneous" standard. *See Gilbert v. Derwinski,* 1 Vet.App. 49, 52–53 (1990); 38 U.S.C. § 7261(a)(4). The finding as to the degree of impairment resulting from a disability is a question of fact. *See Solomon v. Brown,* 6 Vet.App. 396, 402 (1994). The Court "must set aside a finding of material fact as clearly erroneous when the Court is left with a definite and firm conviction . . . that a mistake has been committed." *Brown (Mitchell) v. Brown,* 4 Vet.App. 307, 309 (1993); *see Harder v. Brown,* 5 Vet.App. 183, 189 (1993); *Hanson v. Derwinski,* 1 Vet.App. 512, 518–19 (1991). The Court may reach this conclusion only if there is no " 'plausible basis' in the record" for the BVA findings at issue. *Gilbert,* 1 Vet.App. at 52–53; *see Moore v. Derwinski,* 1 Vet.App. 356, 358 (1991).

In this case the appellant argues that the BVA's finding that the appellant was not suffering from severe pain and weakness in his left shoulder was clearly erroneous because the Board did not adequately consider the appellant's entire medical history, particularly the July 1988 orthopedic examination. The appellant relies primarily on the findings of the July 1988 examination to show that he suffers "severe, painful motion or weakness" which corresponds to a 50% rating, the highest level for prosthetic replacement of a minor shoulder. *See* 38 C.F.R. § 4.71(a), Diagnostic Code (DC) 5051 (1993). Alternatively, a rating increase for muscle injuries under 38 C.F.R. § 4.73, DC 5303 (1993), to 30%, the "severe" level, requires "moderate or extensive loss of deep fascia or of muscle substance" and "tests of strength ... [which] show positive evidence of severe impairment of function." 38 C.F.R. § 4.56(d) (1993). While the appellant had almost no muscle strength and limited range of motion in his shoulder according to the July 1988 examination report, he did not suffer the same limitations in 1992. At the 1992 examination, the appellant showed "fair" strength, "good" external and internal rotation, pain only on abduction greater than 90 degrees, and there was no indication of moderate or extensive loss of deep fascia or muscle substance, or severe impairment of function. Therefore, the Board was not in error to rely on these examination results and to decline to award an increased disability rating under DC 5051 or DC 5303.

■ Compensation for service-connected injury is limited to those claims which show present disability. *See* 38 U.S.C. § 1110; *Brammer v. Derwinski*, 3 Vet.App. 223, 225 (1992). Where entitlement to compensation has already been established and an increase in the disability rating is at issue, the present level of disability is of primary concern. In *Proscelle v. Derwinski*, 2 Vet. App. 629 (1992), a four-year period had elapsed since the veteran's last medical examination of his service-connected disability and his claim for an increased rating. The Court found that before the claim could be fairly adjudicated, a medical examination to determine the *current* level of disability was required. *Id.* at 632. *See also Schafrath v.*

*Derwinski*, 1 Vet.App. 589, 595 (1991) ("Where the record does not adequately reveal the current state of the claimant's disability, a VA examination must be conducted."). Although a rating specialist is directed to review the recorded history of a disability in order to make a more accurate evaluation, *see* 38 C.F.R. § 4.2 (1993), the regulations do not give past medical reports precedence over current findings. In this case, the Board evaluated the 1992 medical findings in light of the appellant's 1986 pre-arthroplasty condition rather than the 1988 examination. The 1992 examination, while only briefly referring to the appellant's past medical history, affords a plausible basis for the Board's findings.

■ The appellant also argues that the Board erred because it did not consider combining the rating under 38 C.F.R. § 4.55(c) (1993) for the injury to muscle group III, intrinsic muscles of the shoulder girdle, with a rating for injury to muscle group I, extrinsic muscles of the shoulder girdle. However, there is no medical evidence to show that muscle group I was affected by the path of the bullet or that muscle group I was implicated by the 1986 arthroplasty. The appellant's speculation that muscle group I appears to be affected because he does not have full range of motion is not compelling evidence that the Board erred. *See Green v. Derwinski*, 1 Vet.App. 121, 124 (1991).

## CONCLUSION

The November 30, 1992, decision of the Board is AFFIRMED.