Citation Nr: 1826240 
Decision Date: 04/26/18 Archive Date: 05/07/18

DOCKET NO. 12-10 801 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Louisville, Kentucky


THE ISSUES

1. Entitlement to an increased rating for residuals of a thoracic spine fracture in excess of 40 percent.

2. Entitlement to an increased rating in excess of 10 percent for left knee chondromalacia patella.


REPRESENTATION

Veteran represented by: Christopher Loiacono, Agent


WITNESS AT HEARING ON APPEAL

The Veteran



ATTORNEY FOR THE BOARD

Shana Z. Siesser, Counsel


INTRODUCTION

The Veteran served on active duty from August 1991 to April 1994 and from May 1998 to August 1999.

This appeal initially came before the Department of Veterans Affairs (VA) Board of Veterans' Appeals (Board) from a December 2011 rating decision of the VA Regional Office in Louisville, Kentucky.

The Veteran was afforded videoconference hearing on the instant issues in November 2014 before the undersigned Veterans Law Judge sitting at Washington, DC. The transcript is of record.

These claims were previously before the Board in April 2015, at which time they were remanded for additional development. 

Entitlement to a total disability rating for individual unemployability (TDIU) was granted in a January 2018 rating decision, effective March 2012. Therefore, it is no longer on appeal before the Board. The Veteran has requested a Travel Board hearing on the issue of an increased evaluation for his psychiatric disorder so that issue is not before the Board at this time.

This appeal was processed using the Virtual VA and Veterans Benefits Management System (VBMS) paperless claims processing systems. Accordingly, any future consideration of this appellant's case should take into consideration the existence of these electronic records.



FINDINGS OF FACT

1. During the entire period on appeal, the evidence does not show the Veteran's thoracic spine disorder caused incapacitating episodes or unfavorable ankylosis of the entire thoracolumbar spine. 

2. The Veteran's left knee disorder is manifested by noncompensable limitation of motion due to pain, without objective evidence of locking or instability. 


CONCLUSIONS OF LAW

1. The criteria for a rating in excess of 40 percent for a thoracic spine disorder have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.159, 3.321, 4.1-4.14, 4.40-4.45, 4.71a, Diagnostic Codes 5238-5237, 5243 (2017).

2. The criteria for an evaluation in excess of 10 percent for a left knee disorder are not met. 38 U.S.C. § 1155 (2012); 38 C.F.R. § 4.71a, Diagnostic Code 5003, 5257, 5258, 5260, 5261 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Veterans Claims Assistance Act of 2000 (VCAA)

As provided for by the VCAA, VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (2012); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2017). As service connection, an initial rating, and an effective date have been assigned for the disabilities considered above, the notice requirements of 38 U.S.C.A. § 5103(a) have been met in this instance. 

The Veteran has been provided satisfactory and timely VCAA notice in advance of the rating decision on appeal. VA's duty to assist has been fulfilled through obtaining medical records, along with adequate VA examinations. The Veteran testified at a Board hearing, during which he received proper assistance in developing the claim. See 38 C.F.R. § 3.103. 

The RO has complied with the Board remand directives. The Board finds that the necessary development has been accomplished and that appellate review may proceed without prejudice to the appellant. See Bernard v. Brown, 4 Vet. App. 384 (1993). For the reasons discussed below, the Board finds that the evidence of record is adequate to adjudicate the claims on appeal.

Law and analysis - Increased rating claims

Disability evaluations are determined by evaluating the extent to which a Veteran's service-connected disability adversely affects his ability to function under the ordinary conditions of daily life, including employment, by comparing his symptomatology with the criteria set forth in the Schedule for Rating Disabilities (Schedule). 38 U.S.C. § 1155; 38 C.F.R. § 4.1.

Separate diagnostic codes identify various disabilities and the criteria for specific ratings. Relevant regulations do not require that all cases show all findings specified by the Schedule; however, findings sufficient to identify the disease and the resulting disability and, above all, coordination of the rating with impairment of function will be expected in all cases. 38 C.F.R. § 4.21.

Where entitlement to compensation has already been established and an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). A claimant, however, may experience multiple distinct degrees of disability, resulting in different levels of compensation, from the time the increased rating claim is filed to the time a final decision is made. See Hart v. Mansfield, 21 Vet. App. 505, 510 (2007). Staged ratings are appropriate when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. Id. 

If two disability evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that evaluation. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. After careful consideration of the evidence, any reasonable doubt remaining will be resolved in favor of the veteran. 38 C.F.R. § 4.3.

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination and endurance. Functional loss may be due to the absence or deformity of structures or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by the visible behavior in undertaking the motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. 38 C.F.R. § 4.40.

With respect to joints, in particular, the factors of disability reside in reductions of normal excursion of movements in different planes. Inquiry will be directed to more or less than normal movement, weakened movement, excess fatigability, incoordination, pain on movement, swelling, deformity or atrophy of disuse. 38 C.F.R. § 4.45.

The intent of the Rating Schedule is to recognize actually painful, unstable or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint. 38 C.F.R. § 4.59.

Thoracic spine fracture

The Veteran's thoracic spine disorder has been rated under 38 C.F.R. § 4.71a, Diagnostic Code 5235, and is therefore evaluated under the General Rating Formula for Diseases and Injuries of the Spine.

The General Rating Formula for Diseases and Injuries of the Spine provides a 40 percent disability rating for favorable ankylosis of the entire thoracolumbar spine. Unfavorable ankylosis of the entire thoracolumbar spine is evaluated as 50 percent disabling. 38 C.F.R. § 4.71a, Diagnostic Codes 5235-5243.

For VA compensation purposes, normal forward flexion of the thoracolumbar spine is zero to 90 degrees, extension is zero to 30 degrees, left and right lateral flexion are zero to 30 degrees, and left and right lateral rotation are zero to 30 degrees. The normal combined range of motion of the thoracolumbar spine is 240 degrees. See 38 C.F.R. § 4.71a, Plate V.

Any associated objective neurological abnormalities, including, but not limited to, bowel or bladder impairment, are evaluated separately under the appropriate diagnostic code. 38 C.F.R. § 4.71a, Diagnostic Codes 5235-5243, Note (1).

In addition to the General Rating Formula for Diseases and Injuries of the Spine, intervertebral disc syndrome may be evaluated under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes, whichever method results in the higher evaluation. See 38 C.F.R. § 4.71a, Diagnostic Code 5243 (2017). 

The Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes provides that when intervertebral disc syndrome is productive incapacitating episodes having a total duration of at least four weeks but less than six weeks during the past twelve months, a 40 percent rating is assigned. When incapacitating episodes have a total duration of at least six weeks during the past 12 months, a maximum 60 percent rating is assigned. 

Note (1) following 38 C.F.R. § 4.71a, Diagnostic Code 5243 provides that an incapacitating episode is a period of acute signs and symptoms due to intervertebral disc syndrome that requires bed rest prescribed by a physician and treatment by a physician. 

Note (2) following 38 C.F.R. § 4.71a, Diagnostic Code 5243 provides that if intervertebral disc syndrome is present in more than one spinal segment, provided that the effects in each spinal segment are clearly distinct, evaluate each segment on the basis of incapacitating episodes or under the General Rating Formula for Diseases and Injuries of the Spine, whichever results in a higher evaluation for that segment.

The Veteran's residuals of a compression fracture of the thoracic spine have been evaluated as 40 percent disabling.

A VA examination was afforded to the Veteran in October 2011. The examiner noted a compression fracture of the thoracic spine during service. Regarding symptoms, the Veteran reported pain without numbness or tingling to the upper extremities, difficulty sitting, increased pain with standing, walking, or other movement of the back. The Veteran stated that flare-ups occur with activities that require bending, lifting, or prolonged sitting. An examination showed flexion limited to 20 degrees with pain at 15 degrees; extension to 10 degrees with pain at 5 degrees, bilateral flexion to 5 degrees, and bilateral rotation to 10 degrees with pain at the end of both ranges. The Veteran was able to perform repetitive-use testing with no additional limitations. The examiner noted localized tenderness of the mid thoracic spine, lower lumbar spine, and paraspinal muscles. There was no guarding. The examiner also noted moderate radicular pain of the right lower extremity and mild radicular pain of the left lower extremity. The Veteran had IVDS but with no incapacitating episodes.

The Veteran underwent a VA examination in August 2012. The examiner noted a T-spine compression fracture in 1994 and a diagnosis of thoracic spine degenerative disc disease and degenerative joint disease in 2012. The Veteran reported pain in between the shoulder blades radiating across the abdomen. He denied flare-ups. An objective examination showed forward flexion to 45 degrees, extension to 25 degrees, bilateral flexion to 25 degrees, and bilateral rotation to 30 degrees, with pain at the ends of all ranges. The Veteran was able to perform repetitive-use testing with no additional limitations. His functional impairment included pain and interference with sitting, standing, and weight-bearing. The Veteran reported tenderness and guarding was noted but it did not result in abnormal gait or spinal contour. Muscle strength testing was normal with no atrophy. Reflex examination was normal and sensory examination was normal with the exception of decreased light touch sensation in the left lower leg and foot. The Veteran reported radicular pain in 2009 but there was no present evidence of radiculopathy. The Veteran did reports pain in the distribution of the thoracic nerves. The examiner found no diagnosis of IVDS. 

The Veteran appeared at a Board hearing in November 2014. He testified that his thoracic spine disorder causes chronic pain. He stated that his legs go weak and numb and his arms go weak as well. Regarding range of motion, the Veteran stated that he can bend to 15 degrees and then he experiences a spasm. He stated that the severe pain prevents him from focusing, performing daily household chores, sitting for more than 10 to 15 minutes, and walking a city block. His back disorder, including the tion he takes for treatment, affects his ability to sleep. The Veteran also stated that the pain and weakness in his arms affect his ability to hold his niece. He reported weekly incapacitating episodes where his wife has to help him dress and escort him to the bathroom. 

Treatment records show the Veteran was involved in a motor vehicle accident in March 2016. He has neck pain, pain between his shoulders, and tenderness. 

The Veteran was afforded a VA examination in May 2016. The examiner noted diagnosis of spondylolisthesis, residuals of a compression fracture T6, T7, T8. The Veteran reported pain from the center of his back to his arms and pain with lifting over 15 pounds, prolonged sitting, and prolonged standing. He denied flare-ups. 

Upon examination, range of motion testing showed flexion to 55 degrees, extension to 20 degrees, bilateral flexion to 25 degrees, and bilateral rotation to 30 degrees. Pain was noted with all ranges other than bilateral flexion. There was objective evidence of pain with weight bearing and pain to palpation between the shoulder blades. The Veteran was able to perform repetitive use testing with no additional loss of function or range of motion. The examiner noted localized tenderness not resulting in abnormal gait or spinal contour. Muscle strength testing was normal with no atrophy. The examiner found no radicular pain or symptoms due to a radiculopathy and no ankylosis. The Veteran also did not have intervertebral disc syndrome or other neurologic disorders. Regarding the functional effects, the examiner opined that the "Veteran's back condition would limit veteran from lifting, bending or twisting with greater than 15 pounds at waist due to back pain, decreased ROM."

The Veteran underwent a VA examination of his spine in January 2018. The examiner noted a diagnosis of a vertebral fracture, residuals of a compression fracture T6, T7, T8. He reported pain from the center of his back to his arms. He treats with a TENS unit. The Veteran reported mid back pain when lifting over 15 pounds and with prolonged sitting or standing. He walks with a cane due to his back disorder. He denied flare-ups. 

Upon objective examination, range of motion testing showed flexion to 40 degrees, extension to 10 degrees, bilateral flexion to 20 degrees, and bilateral rotation to 30 degrees. Pain was noted upon examination for all ranges. The examiner also noted functional loss in that the Veteran had difficult taking on and off his pants due to pain in the lumbar spine. The Veteran was able to perform repetitive use testing with no additional loss of range of motion or function. The examiner opined that there was evidence of back pain with all ranges of motion, active and passive and pain in non-weight bearing. The examiner noted guarding of the right lower lumbar area, not resulting in abnormal gait or spinal contour. Muscle strength testing, reflex examination, and sensory examination were normal. There was no evidence of radicular pain or ankylosis. The examiner noted a diagnosis of IVDS but no episodes of prescribed bedrest. Regarding functional effect, the examiner opined that 

This veteran's residuals compression fx T6, 7,& 8 would moderately to severely affect his ability to do physical employment and would mildly effect his ability to do sedentary employment due to pain in mid and upper back with prolonged standing, sitting and walking, and inability to do heavy lifting, pushing or pulling. 

VA treatment records from March 2018 show the Veteran reported muscle and joint pain. A review of systems showed he had good strength and normal range of motion of all extremities. His spine was non-tender and his gait was normal. 

Upon review of the evidence, the Board does not find that a rating in excess of 40 percent is warranted. At no point during the periods on appeal does the evidence of record show that the Veteran experiences unfavorable ankylosis, that is, a condition in which the entire cervical spine, the entire thoracolumbar spine, or the entire spine is fixed in flexion or extension, and the ankylosis results in one or more of the following: difficulty walking because of a limited line of vision; restricted opening of the mouth and chewing; breathing limited to diaphragmatic respiration; gastrointestinal symptoms due to pressure of the costal margin on the abdomen; dyspnea or dysphagia; atlantoaxial or cervical subluxation or dislocation; or neurologic symptoms due to nerve root stretching. See Note (5). Additionally, there is no evidence of incapacitating episodes having a duration of at least six weeks in the prior 12 months. Therefore, a rating in excess of 40 percent is denied. There is no evidence of radiculopathy secondary to the back disorder to the extent that any separate rating is warranted.

The Board has considered the Veteran's lay statements in reaching this decision. While the Veteran is competent to testify as to the symptoms he personally experiences and the Board finds his statements to be credible, the objective findings of the VA examiners are more probative as to the application of the rating criteria. 

Chondromalacia, left patella

The Veteran's left knee chondromalacia is currently evaluated at 10 percent disabling under Diagnostic Code 5260. 

Under Diagnostic Codes 5010, arthritis established by X-ray findings will be rated on the basis of limitation of motion under the appropriate diagnostic codes for the specific joint or joints involved. When however, the limitation of motion of the specific joint or joints involves is noncompensable under the appropriate diagnostic code, a rating of 10 percent is for application for each such major joint or group of minor joints affect by limitation of motion.

Under Diagnostic Code 5260, a noncompensable rating is assigned when flexion of the leg is limited to 60 degrees; a 10 percent rating is assigned when flexion is limited to 45 degrees; a 20 percent rating is assigned when flexion is limited to 30 degrees; and a 30 percent rating is assigned when flexion is limited to 15 degrees. 38 C.F.R. § 4.71a, Diagnostic Code 5260.

Under Diagnostic Code 5261, a noncompensable rating is assigned when extension of the leg is limited to 5 degrees; a 10 percent rating is assigned when extension is limited to 10 degrees; a 20 percent rating is assigned when extension is limited to 15 degrees; a 30 percent rating is assigned when extension is limited to 20 degrees; a 40 percent rating is warranted for extension limited to 30 degrees; and a 50 percent rating is assigned when extension is limited to 45 degrees. 38 C.F.R. § 4.71a, Diagnostic Code 5261.

The normal range of knee motion is 140 degrees of flexion and zero degrees of extension. 38 C.F.R. § 4.71, Plate II.

The Veteran contends that his left knee disorder warrants a rating in excess of 10 percent. 

In an October 2011 VA examination, the examiner noted an in-service diagnosis of left knee chondromalacia. The Veteran reported current symptoms of giving way and flare-ups due to locking and pain. Range of motion was to 90 degrees of flexion with pain at 70 degrees and full extension. The Veteran was able to perform repetitive-use testing with no additional limitations. He had pain to palpation. Muscle strength testing and joint stability testing were normal and there was no evidence of recurrent subluxation or dislocation. The examiner also noted no tibial or fibular impairment, no meniscal impairment, and no arthritis on x-ray. No objective evidence of locking was noted.

The Veteran was afforded a VA examination of his left knee in February 2013. The examiner noted that chondromalacia of the left patella was diagnosed during the Veteran's service. He reported weakness and occasional giving way. The Veteran indicated that had locking on bending and pain with locking. The knee does not dislocate but the Veteran reported a "catching" sensation. He also reported grinding, numbness, tingling, swelling, and varying degrees of range of motion. He stated that he has flare-ups of knee pain with episodes of locking. 

Range of motion testing showed flexion to 110 degrees with pain at 100 degrees and full extension. The Veteran was able to perform repetitive-use testing with no additional limitations. His functional impairment included less movement than normal, weakened movement, pain on movement, swelling, and disturbance of locomotion. Muscle strength testing was 4/5 for left flexion and extension. Joint stability tests were normal with no evidence of subluxation or dislocation. There examiner did not note any other tibial or fibular impairment. The Veteran had no meniscal conditions. Imaging studies were completed but showed no evidence of arthritis or patellar subluxation. Regarding functional impairment, the Veteran's knee disorder limits squatting due to pain and limited range of motion. 

At the November 2014 Board hearing, the Veteran testified that he has built-up scar tissue under his kneecap. He stated that he had surgery to remove it but the scar tissue returned. As a result, he knee does not move smoothly and freely and it locks up, causing him to fall. The Veteran experiences painful motion but was not in treatment because he was told that his only option was surgery but the scar tissue would continue to return. 

The Veteran underwent a VA examination in May 2016. The examiner noted a diagnosis of chondromalacia patella, left knee. The Veteran reported dull, constant pain in the left knee and that he is unable to squat, do deep knee bends, or run. He also stated that he had difficulty with weight-bearing on the knee, as well as walking up stairs. He denied flare-ups. 

An objective examination showed range of motion was from 0 to 110 degrees with pain on flexion and with weight-bearing. He had pain to his prepatellar ligament and there was objective evidence of crepitus. The Veteran was able to perform repetitive use testing with no additional function loss or loss in range of motion. Muscle strength testing of the left knee was 4 out of 5 for flexion with normal extension. There was no atrophy. Joint stability testing was normal with no instability and no recurrent effusions. The Veteran did not have a tibial or fibular impairment. The examiner noted the Veteran did not have a meniscal condition but had a meniscotomy in 1999 that left residuals of pain and decreased range of motion. The Veteran had occasional use of a knee brace and regular use of a cane to support his back. An x-ray of the left knee was negative. Regarding functional impact, the examiner opined that the Veteran's left knee condition would limit the Veteran from running, deep knee squats or working with prolonged kneeling, decreased range of motion, and swelling. 

The Veteran was afforded another VA examination in January 2018. The examiner noted a diagnosis of chondromalacia patella, left knee. The Veteran again reported dull, constant pain in the left knee and that he is unable to squat, do deep knee bends, or run. He also stated that he had difficulty with weight-bearing on the knee, as well as walking up stairs. He denied flare-ups. 

An objective examination showed range of motion was from 0 to 100 degrees with pain on flexion and extension, with passive range of motion, and with weight-bearing. There was no evidence of pain when used in non-weight bearing. He had anterior tenderness with no objective evidence of crepitus. The Veteran was able to perform repetitive use testing with no additional function loss or loss in range of motion. Muscle strength testing of the left knee was normal with no atrophy. Joint stability testing was normal with no instability and no recurrent effusions. The Veteran did not have a tibial or fibular impairment. The examiner noted the Veteran did not have a meniscal condition but had a meniscectomy in 1999 that left residuals of pain and decreased range of motion. There was no objective evidence of locking. The Veteran had occasional use of a knee brace and regular use of a cane to support his back. An x-ray of the left knee was negative. Regarding functional impact, the examiner opined that the Veteran's left knee condition would limit the Veteran from running, deep knee squats or working with prolonged kneeling, decreased range of motion, and walking on stairs or uneven surfaces. 

The Board has reviewed all of the relevant treatment reports of record. None of the treatment reports of record document specific range of motion of the left knee, or provide any evidence of ankylosis or dislocated or removal of cartilage. 

Upon review of the evidence, the Board finds that a rating in excess of 10 percent is not warranted. Throughout the entire period on appeal, the Veteran's flexion was limited, at worst, to 70 degrees. His extension has been consistently normal. There is no evidence of ankylosis, tibial or fibular impairment, or a meniscal disorder. 

The Board acknowledges the Veteran's subjective complaints of painful motion, weakness, and difficulty engaging in activities such as walking, sitting and standing. However, the objective evidence of record indicates such pain does not limit the Veteran's functional range of motion to a degree higher than the presently assigned ratings, and as such, it does not serve as a basis for higher evaluations. See Mitchell v. Shinseki, 25 Vet. App. 32 ("pain itself does not rise to the level of functional loss as contemplated by the VA regulations applicable to the musculoskeletal system"). Moreover, there was no clinical evidence of instability or locking objectively demonstrated.

In determining the actual degree of disability, an objective examination is more probative of the degree of the Veteran's impairment. The opinions and observations of the Veteran alone cannot meet the burden imposed by the rating criteria under 38 C.F.R. § 4.71a with respect to determining the severity of his service-connected disabilities. Moray v. Brown, 2 Vet. App. 211, 214 (1993). As the objective findings show that the Veteran's limitation of motion is, at worst, limited to 70 degrees of flexion with pain, a rating in excess of 10 percent is not warranted. 

The Board has considered whether the Veteran's disorder may be rated by comparison under Diagnostic Code 5259 for cartilage, semilunar, removal of, symptomatic. However, Diagnostic Code 5259 offers a maximum 10 percent rating, so the Veteran would not be entitled to any additional compensation. 

The Board has also considered other potentially applicable diagnostic codes pertaining to the left knee. The record demonstrates that the Veteran does not have left knee ankylosis, dislocated semilunar cartilage, impairment of the tibia or fibula, or genu recurvatum (Diagnostic Codes 5256, 5258, 5262, and 5263). As noted, the objective evidence has not confirmed locking, meniscal or tibia or fibula impairment. Therefore, these diagnostic codes do not provide a basis for an increased rating.


ORDER

A rating in excess of 40 percent for the Veteran's thoracic spine disorder is denied.

A rating in excess of 10 percent for a left knee disorder is denied. 


______________________________________________
MICHAEL D. LYON
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs