﻿Citation Nr: AXXXXXXXX
Decision Date: 07/30/19 Archive Date: 07/29/19

DOCKET NO. 190518-8714
DATE: July 30, 2019

ORDER

Entitlement to a rating in excess of 30 percent for status post right reverse total shoulder arthroplasty with revision of right total shoulder arthroplasty, is denied.

REMANDED

Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU) is remanded.

FINDINGS OF FACT

Throughout the period on appeal, the Veteran's right shoulder disability has been manifest by no worse than intermediate degrees of residual weakness, pain, or limitation of motion.

CONCLUSION OF LAW

The criteria for a rating in excess of 30 percent for status post right reverse total shoulder arthroplasty with revision of right total shoulder arthroplasty have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.71a, Diagnostic Code 5051.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from September 1964 to September 1966. This matter comes before the Board of Veterans’ Appeals (Board) on appeal from an April 2019 AMA rating decision by the Department of Veterans Affairs (VA) Regional Office (RO). The Veteran timely appealed this rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ). As such, the Board will not consider any evidence submitted after the April 2019 rating decision was issued, but will consider additional arguments submitted by the Veteran, such as his May 2019 statement.

At the outset, the Board notes that although the Veteran's representative made arguments regarding entitlement to a compensable rating for scars, the Veteran did not appeal that issue and the Board declines to take of jurisdiction of it at this time. The Veteran's appeal to the Board specifically stated that he believed the noncompensable rating was appropriate.

Entitlement to a rating in excess of 30 percent for right shoulder disability from May 23, 2017 to September 1, 2017 and in excess of 30 percent for period beginning October 1, 2018

At the outset, the Board notes that the Veteran first filed a notice of intent to file a claim on May 23, 2017. A claim for increase was received in August 2017 and the Veteran was notified of a decision on that claim that same month. New evidence was received prior to the end of the appeal period; thus, the decision did not become final. As such, the period on appeal goes back to the notice of intent to file a claim, May 23, 2017. See 38 C.F.R. §3.156(b). 

The Veteran contends that he should be in receipt of a higher rating due to chronic residuals consisting of severe, painful motion or weakness.

The AOJ did not make any favorable findings. The Board finds that the Veteran is right handed, thus the Board will apply the ratings for the major side affected.

Disability ratings are determined by applying a schedule of ratings that is based on average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. 38 U.S.C. § 1155; 38 C.F.R., Part 4. Each disability must be viewed in relation to its history and the limitation of activity imposed by the disabling condition should be emphasized. 38 C.F.R. § 4.1. Examination reports are to be interpreted in light of the whole recorded history, and each disability must be considered from the point of view of the appellant working or seeking work. 38 C.F.R. § 4.2. Where there is a question as to which of two disability evaluations shall be applied, the higher evaluation is to be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating is to be assigned. 38 C.F.R. § 4.7.

The regulations require review of the recorded history of a disability by the adjudicator to ensure an accurate evaluation, however, the regulations do not give past medical reports precedence over the current medical findings. Where an increase in the disability rating is at issue, the present level of the Veteran’s disability is the primary concern. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). It is also noted that staged ratings are appropriate for an increased rating claim whenever the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. Hart v. Mansfield, 21 Vet. App. 505 (2007).

The Veteran's shoulder disability is rated under Diagnostic Code 5051. Under Diagnostic Code 5051, a 100 percent rating is assigned for one year following implantation surgery; a 60 percent rating is assigned with chronic residuals consisting of severe, painful motion or weakness in the affected extremity; and a 30 percent rating is the minimum rating to be assigned. If intermediate degrees of residual weakness, pain or limitation of motion exist, the disability is to be rated by analogy to diagnostic codes 5200 and 5203.

Diagnostic Code 5200 rates ankylosis of scapulohumeral articulation. Under Diagnostic Code 5200 a 50 percent rating is for unfavorable ankylosis where abduction is limited to 25 degrees from the side; a 40 percent rating is assigned for intermediate ankylosis where abduction is between favorable and unfavorable; a 30 percent rating is assigned for favorable ankylosis where abduction is to 60 degrees and the Veteran can reach mouth and head.

The maximum rating under Diagnostic Code 5203 is 20 percent, thus no rating under this code would be more beneficial to the Veteran than his currently assigned 30 percent rating.

Further, Diagnostic Code 5201 provides for a 40 percent rating where limitation of motion of the arm is to 25 degrees from the side.

The words “moderate,” “moderately severe,” and “severe” as used in the various Diagnostic Codes are not defined in the VA Schedule for Rating Disabilities. Rather than applying a mechanical formula, the Board must evaluate all of the evidence, to the end that its decisions are “equitable and just.” 38 C.F.R. § 4.6. The use of terminology such as “severe” by VA examiners and others, although an element of evidence to be considered by the Board, is not dispositive of an issue. All evidence must be evaluated in arriving at a decision regarding an increased rating. 38 C.F.R. §§ 4.2, 4.6.

The Veteran has stated that throughout the periods on appeal, his shoulder disability has been manifested by residuals consisting of chronic severe pain. 

The Veteran underwent a VA examination in June 2017. The Veteran described his pain as a constant 8 out of 10 and worse with activity. The examiner found that flexion was limited to 90 degrees, abduction was limited to 90 degrees, external rotation was limited to 15 degrees, and internal rotation was limited to 80 degrees. Pain was noted on the examination and caused the functional loss. Additionally, the examiner found decreased muscle strength in both flexion and abduction, noting it as 4 out of 5.

The Veteran underwent shoulder surgery on September 1, 2017 in an attempt to alleviate the pain and was awarded a temporary total disability rating for convalescence to October 1, 2018. 

The Veteran was afforded another VA examination in January 2019. At that examination the Veteran noted that his shoulder was sore, and he was not able to use a shovel or sledge hammer. The examiner found that flexion was limited to 70 degrees, abduction was limited to 80 degrees, external rotation was limited to 5 degrees, and internal rotation was limited to 60 degrees. Pain was noted on the examination and caused the functional loss. No loss of muscle strength was noted, and the Veteran did not report any flare ups. 

Throughout the appeal period, the Board finds the Veteran's shoulder disability to be manifest by intermediate degrees of residual pain. While pain was noted on both the May 2017 and January 2019 VA examinations, pain only limited motion to no worse than abduction to 80 degrees. There is no evidence that pain, even during a flare up, prohibited the Veteran from reaching his mouth or head. 

As the Veteran did not have limitation of abduction less than 60 degrees, a rating by analogy in excess of 30 percent under Diagnostic Code 5200 is not warranted. The maximum rating under Diagnostic Code 5203 is 20 percent, thus the minimum rating assigned under Diagnostic Code 5051 is more beneficial. Further, the Board has considered assigning a rating under Diagnostic Code 5201. However, at worst, abduction is limited to midway between the side and shoulder, which would equate to a 30 percent rating, thus there is no benefit for the Veteran to be rated under this Diagnostic Code. 

For the Veteran's intermediate degrees of residual pain, weakness, and limitation of motion, the most beneficial rating is the 30 percent minimum rating assigned under Diagnostic Code 5051. As such, entitlement to a rating in excess of 30 percent for the Veteran's right shoulder disability is denied. In denying such a rating, the Board finds the benefit of the doubt doctrine is not applicable. 38 U.S.C. § 5107; 38 C.F.R. §§ 4.3, 4.7.

REASONS FOR REMAND

Entitlement to a TDIU from May 23, 2017 to September 1, 2017 and for the period beginning October 1, 2018 

This claim is part and parcel of the Veteran’s claim for increased evaluation. See Rice v. Shinseki, 22 Vet. App. 447 (2009). Throughout the appeal period, the Veteran has been in receipt of a 30 percent rating for his right shoulder disability and a 10 percent rating for tinnitus. His overall rating is 40 percent; thus, he does not meet the schedular criteria for a TDIU. See 38 C.F.R. § 4.16(a). 

After a review of the claims file, the Board finds that a remand is necessary in order to refer the claim for extraschedular consideration with the Director of Compensation. 

The Veteran is shown to have a high school education, although he has additional education as a dental technician. The Veteran reported in a September 2017 VA Form 21-8940 that he worked for 50 years after a dental technician before retiring in 2002, at approximately age 58. Although it does not appear that the Veteran has stated the reason for his retirement, he does indicate in a September 2017 statement that he sold his dental laboratory in 2002 and that he did not look for further employment after that because it was the only thing that he had done. He noted that prior to April 2014, he had two shoulder surgeries, but that the third one in April 2014 failed and the Veteran has had a subsequent fourth surgery, as noted above. He asserted that he is no longer capable of performing manual labor following his shoulder surgeries. 

It appears that the Veteran’s entire career prior to retirement was working as a dental technician in a dental laboratory. It appears that he was able to work until 2002 because he owned his own dental laboratory. He has claimed that after his April 2014 surgery, he was no longer able to perform the manual labor necessary to perform that occupation. The record therefore raises whether the Veteran would be able to obtain and maintain substantially gainful employment in this case outside of a protected work environment. A remand is therefore necessary in order to obtain an opinion from the Director of Compensation in the first instance in this case. 

The matters are REMANDED for the following action:

1. Complete any and all appropriate development of the Veteran’s TDIU claim, including obtaining any information from the Veteran—such as an updated VA Form 21-8940—regarding his work education and history since May 2017 in this case.

2. After completion of the above, the AOJ must refer this case to the Director of Compensation for an opinion regarding extraschedular consideration of TDIU under 38 C.F.R. § 4.16(b), to include a discussion of whether the Veteran would be able to obtain and maintain substantially gainful employment outside of a protected work environment since May 2017.

 

MARTIN PETERS

Acting Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD J. Uller, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.