﻿Citation Nr: AXXXXXXXX
Decision Date: 03/31/20 Archive Date: 03/31/20

DOCKET NO. 190807-17504
DATE: March 31, 2020

ORDER

Entitlement to a rating of 10 percent, but no higher, for loss of sense of smell is granted, subject to controlling regulations governing the payment of monetary awards.

The claim for entitlement to service connection for rhinitis is dismissed.

REMANDED

Entitlement to service connection for sleep apnea is remanded.

Entitlement to service connection for cervical spine disability is remanded. 

FINDINGS OF FACT

1. The competent and probative evidence is at least in equipoise as to whether the Veteran demonstrated nearly complete loss of sense of smell.

2. A rating decision denying a claim for service connection for rhinitis was issued on January 17, 2019. The Veteran was notified of this decision in a January 23, 2019 letter, which indicated that if he disagreed with the decision and wanted to appeal it, he had to complete and return a Notice of Disagreement, VA Form 21-0958, by January 23, 2020. 

3. The Veteran filed a VA Form 10182, Decision Review Request: Board Appeal (Notice of Disagreement) in August 2019. 

CONCLUSIONS OF LAW

1. The criteria for a 10 percent disability rating for loss of sense of smell have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.87a, Diagnostic Code (DC) 6275.

2. The Board lacks jurisdiction over the claim for service connection for rhinitis. 38 U.S.C. § 7105 (a) (2012); 38 C.F.R. §§ 3.2400, 19.2, 19.20, 19.21, 19.22 (2019).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from August 1992 to April 1998. This matter comes before the Board of Veterans’ Appeals (Board) on appeal from January 2019, February 2019, July 2019 rating decisions of a Department of Veterans Affairs (VA) Regional Office (RO).

The Veteran selected the Direct Review lane without a Board hearing when he opted into the Appeals Modernization Act (AMA) review system by submitting an August 2019 VA Form 10182 (Decision Review Request: Board (Notice of Disagreement)). Accordingly, the Board will consider the evidence of record at the time of the aforementioned rating decisions.

In the July 2019 rating decision, the Agency of Original Jurisdiction (AOJ) determined that it had received new and relevant evidence to readjudicate the claims of service connection for cervical spine and service connection for sleep apnea. The Board is bound by this favorable finding. 38 C.F.R. § 3.104 (c) (eff. Feb. 19, 2019). As such, the Board does not need to readjudicate the new and material evidence aspect of the claim and may proceed to the merits of the service connection claim.

Increased Rating

Disability ratings are determined by applying the criteria set forth in the 

VA Schedule for Rating Disabilities, found in 38 C.F.R., Part 4. The percentages are based on the average impairment of earning capacity as a result of service-connected disability, and separate diagnostic codes identify the various disabilities and the criteria for specific ratings. 38 U.S.C. § 1155; 38 C.F.R. § 4.1.

In considering the severity of a disability, it is essential to trace the medical history of the Veteran. 38 C.F.R. §§ 4.1, 4.2, 4.41. Consideration of the whole-recorded history is necessary so that a rating may accurately reflect the elements of disability present. 38 C.F.R. § 4.2. While the Veteran’s entire history is reviewed when assigning a disability rating, 38 C.F.R. § 4.1, where service connection has already been established and an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). Additionally, in determining the present level of disability for any increased rating claim, the Board must consider the application of staged ratings. See Hart v. Mansfield, 21 Vet. App. 505, 510 (2007). In other words, where the evidence contains factual findings that demonstrate distinct time periods in which the service-connected disability exhibited diverse symptoms meeting the criteria for different rating during the course of the appeal, the assignment of staged ratings would be necessary.

If two disability evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. All reasonable doubt as to the degree of disability will be resolved in favor of the claimant. 38 C.F.R. § 4.3.

Where entitlement to compensation has already been established and an increase in the disability rating is at issue, the primary concern is the present level of disability. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). However, the Board must also consider staged ratings. Hart v. Mansfield, 21 Vet. App. 505, 509-10 (2007). 

The evaluation of the same disability under several diagnostic codes, known as pyramiding, must be avoided; however, separate ratings may be assigned for distinct disabilities resulting from the same injury so long as the symptomatology for one condition is not duplicative of or overlapping with the symptomatology of the other. Esteban v. Brown, 6 Vet. App. 259, 262 (1994); 38 C.F.R. § 4.14.

Entitlement to a compensable rating for loss of sense of smell.

The Veteran’s loss of smell is currently rated as noncompensable under DC 6275 for loss of sense of smell. 

Under DC 6275, the only schedular rating is a10 percent rating is for complete loss of sense of smell. See 38 C.F.R. § 4.87a, DC 6275.

A February 2018 VA examination noted the Veteran’s diagnosis of anosmia. The examiner determined that the Veteran has a complete loss of sense of smell due to a blockage in the nasal passage affecting the olfactory nerve, an anatomical or pathological basis for the condition. The examiner noted that the Veteran has a scar in his nasal cavity due to the surgical removal of nasal polyps. Also, the examiner considered several imaging studies conducted in February 2015, in addition conducting a smell testing kit. 10/11/2018, Other. 

Additionally, the Veteran was afforded VA examination September 2015, which noted a diagnosis of hyposmia. The examiner determined that the Veteran has partial loss of smell due to nasal polyps, an anatomical or pathological basis for the condition. The examiner did not review imaging or laboratory studies, and did not perform a qualitative smell test. 09/09/2015, C&P Exam.

Moreover, an August 2018 VA examination also noted a diagnosis of hyposmia and determined that that the Veteran has partial loss of smell due to inflamed nasal passages and chronic nasal drip, an anatomical or pathological basis for the condition. The examiner did not note the scar in the Veteran’s nasal cavity. Additionally, the examiner did not conduct a qualitative smell test. 08/06/2018, C&P Exam.

After reviewing the relevant medical evidence and applying the above laws and regulations, the Board will give the Veteran the benefit-of-the-doubt and find that the Veteran is entitled to a rating of 10 percent, but no higher, based on complete loss of sense of smell. The Board places great probative weight on the February 2018 VA examination, as the examiner conducted a smell test and reviewed the relevant imaging studies and medical records. The Board acknowledges the September 2015 and August 2018 VA examinations, which found that the Veteran has a partial loss of smell. However, the Board places less probative weight on these examinations as they did not perform qualitative smell tests. The 10-percent rating, however, is the maximum rating provided under Diagnosis Code 6275. Therefore, a rating greater than 10 percent is not warranted as there is no schedular basis for a higher rating for loss of sense of smell. See 38 C.F.R. § 4.87a. There is also no other potentially applicable diagnostic code under which a higher rating would be warranted.

The Board has considered the Veteran’s claim and decided entitlement based on the evidence. Neither the Veteran nor his representative has raised any other issues, nor have any other issues been reasonably raised by the record, with respect to his claim. See Doucette v. Shulkin, 28 Vet. App. 366, 369-70 (2017) (confirming that the Board is not required to address issues unless they are specifically raised by the claimant or reasonably raised by the evidence of record).

Entitlement to service connection for Rhinitis is Dismissed

An AMA appeal comes before the Board in one of three ways: 1) an appeal of a Rapid Appeals Modernization Program rating decision; 2) an appeal of a rating decision with a notification letter dated on or after February 19, 2019; or 3) an appeal of a statement of the case or supplemental statement of the case issued on or after February 19, 2019. 38 C.F.R. § 19.2(d); 38 C.F.R. § 3.2400.

There are currently two different ways to perfect an appeal to the Board. First, there is the “legacy” system for VA decisions issued prior to February 19, 2019. See 38 C.F.R. § 19.2(c). Under the legacy system, perfecting an appeal to the Board is part of a statutory and regulatory scheme that requires the filing of a notice of disagreement (NOD), specifically VA Form 21-0958, issuance of a statement of the case (SOC), and filing of a formal appeal thereafter. 38 U.S.C. § 7105(a); 38 C.F.R. §§ 19.20, 19.21, 19.22.

Second, under the AMA, a claimant can appeal by submitting a NOD using the appropriate form, VA Form 10182, directly to the Board. As above, the implementation date for the AMA is February 19, 2019 so the AMA only applies to VA decisions issued beginning February 19, 2019. For VA decisions prior to February 19, 2019, an appellant was required to file a notice of disagreement (NOD), specifically VA Form 21-0958, in order to initiate an appeal. 38 C.F.R. § 20.201 (2018). A Veteran could also opt into the AMA via the Rapid Appeals Modernization Program (RAMP) or after a SOC issued on or after February 19, 2019. 38 C.F.R. § 3.2400(c)(1), (2).

In August 2019, the Veteran submitted a VA Form 10182 Decision Review Request: Board Appeal (Notice of Disagreement) and chose Direct Review by a Veterans Law Judge. The Veteran specified that the rating decision he was appealing was the January 2019 rating decision referenced above, which denied service connection for rhinitis. This rating decision was under the legacy system as it was issued prior to February 19, 2019. The Veteran was notified of the denial in a notification letter dated January 23, 2019, and told that if he disagreed with the decision and wanted to appeal it, he had to complete and return a Notice of Disagreement, VA Form 21-0958, by January 23, 2020, one year from the date of the notification letter. The regulations in effect from March 24, 2015, provided that “in every case in which the agency of original jurisdiction (AOJ) provides, in connection with its decision, a form for the purpose of initiating an appeal, a notice of disagreement consists of a completed and timely submitted copy of that form.” Moreover, “VA will not accept as a notice of disagreement an expression of dissatisfaction or disagreement with an adjudicative determination by the agency of original jurisdiction and a desire to contest the result that is submitted in any other format, including on a different VA form.”

Unfortunately, the Board lacks jurisdiction because the Veteran was notified of a rating decision prior to the February 19, 2019 implementation of the AMA, and thus needed to file the legacy notice of disagreement (NOD) (VA Form 21-9058) that was provided by the AOJ and which the AOJ indicated had to be filed within a year of its January 23, 2019 notification letter in order to initiate an appeal. He could only have opted into the AMA had he done so within 60 days of a SOC issued after February 19, 2019. See 38 C.F.R. § 3.2400(c)(2). Instead, VA received a VA Form 10182 (AMA Board appeal) and the case was erroneously placed on the AMA docket.

In other words, the Board cannot accept the VA Form 10182 as an AMA appeal as the AMA does not apply to rating decisions issued prior to February 19, 2019, such as the January 2019 rating decision here. The Board also cannot accept the VA Form 10182 as a properly filed NOD in a legacy case as it is not the correct form prescribed by the Secretary for such appeals.

For the foregoing reasons, the Board lacks jurisdiction over the claim on appeal and it must therefore be dismissed. As explained in detail in the instructions following this decision, the Veteran may at any time file a supplemental claim with the AOJ after receiving this decision. 38 U.S.C. § 5104C(a)(1)(B), (b); 5108; 38 C.F.R. §§ 3.2501, 20.1105(a). If filed within one year, this supplemental claim will preserve the date of the claim denied herein as the effective date of the grant of the benefit or benefits sought. 38 U.S.C. § 5110(2)(B); 38 C.F.R. § 3.2500(h).

REASONS FOR REMAND

Entitlement to service connection for sleep apnea is remanded.

The Veteran contends that the onset of his sleep apnea condition occurred during his period of active service. 

The treatment records reveal that the Veteran is diagnosed with and being treated for sleep apnea. 12/09/2015; Correspondence; 12/09/2015, Medical Treatment Record – Non-Government Facility; 07/20/2018, Medical Treatment Record – Government Facility. 

Additionally, lay statements from the Veteran, his spouse, and a fellow servicemember indicate that the Veteran exhibited symptoms of sleep apnea during active service. Specifically, the Veteran was observed to snore loudly while asleep and drowsy while awake. 12/09/2015, Buddy/Lay Statement; 03/04/2017, Buddy/Lay Statement; 07/20/2018, Buddy/Lay Statement; 07/20/2018, VA 21-4138; 04/10/2019, Buddy/Lay Statement.

A September 2015 VA examination opined that the condition is less likely than not related to service. Specifically, the examiner found that the Veteran was not diagnosed with sleep apnea. Additionally, the rationale suggests that the examiner limited any opinion as to whether a sleep apnea condition is related to the Veteran’s nasal polyps, rather than whether the condition had its onset during active service. 09/09/2015, C&P Exam.

A July 2019 VA examination noted that the Veteran was diagnosed with obstructive sleep apnea on September 16, 2015, several days after the Veteran was afforded the September 2015 VA examination. The examiner opined that the Veteran’s sleep apnea is less likely than not proximately due to or the result of the Veteran’s service-connected sinusitis with nasal polyps. 07/03/2019, C&P Exam. 

Upon review, the Board finds that the September 2015 and July 2019 VA examinations are inadequate, as neither examination provides a medical opinion regarding whether the Veteran’s sleep apnea condition had its onset during or is otherwise related to his period of active service. Based on this pre-decisional duty to assist error, a new opinion is necessary to determine the nature and etiology of the Veteran’s sleep apnea. 38 C.F.R. § 20.802(a).

Entitlement to service connection for cervical spine disability is remanded. 

The Veteran contends that onset of his cervical spine condition occurred during or is otherwise related to his period of active service. Alternatively, the Veteran contends that his cervical spine condition is proximately due to or aggravated by his service-connected right shoulder disability. 

The Veteran has asserted that, after separation from service, he has continuously experience neck pain while lifting objects or doing anything overhead for short periods of time. The Veteran used pain medication during flare-ups. And, he ultimately sought medical treatment in 2014 after the condition had worsened. 10/31/2018, VA 21-4138. Additionally, the Veteran indicated that he was self-medicating after separation from service because he was not earning a salary as a subsistence farmer and fisher and could not afford medical treatment for a long time. 03/14/2019, VA 21-4138.

A May 2017 VA examination noted that the Veteran is diagnosed with degenerative arthritis of the spine, mild degenerative disc disease, mild to moderate spinal canal stenosis, and right foraminal narrowing at C5-C8 with impingement at C8. The examiner opined that the cervical spine condition is less likely than not proximately due to or the result of the Veteran’s service-connected right shoulder disability. 05/16/2017, C&P Exam; 05/16/2017, C&P Exam (medical opinion).

An April 2019 VA examination noted that the Veteran is diagnosed with degenerative arthritis of the spine, degenerative disc disease, and spinal stenosis. The examiner opined that the cervical spine condition is less likely than not incurred in or caused by active service. Specifically, examiner indicated that the Veteran’s in-service neck injury was acute and that the subsequent treatment records are silent as to complaints of neck pain until a heavy lifting incident in November 2014 that may have exacerbated the condition. Additionally, the examiner opined that the cervical spine condition is less likely than not proximately due to or the result of the Veteran’s service-connected left and right shoulder disabilities. Specifically, the examiner noted that the medical literature does not support a shoulder strain resulting in degenerative arthritis of the spine, degenerative disc disease, and spinal stenosis. 04/23/2019, C&P Exam; 04/23/2019, C&P Exam (medical opinion).

Upon review, the Board finds that the April 2019 VA examination is inadequate, as the opinion as to whether the condition had its onset during the Veteran’s period of active service relies on the lack of treatment records after separation. However, the examiner did not sufficiently consider the Veteran’s lay statement that he could not seek medical treatment because he was living as a subsistence farmer and fisher and could not afford treatment. Additionally, the Board notes that the May 2017 VA examination merely addresses the claim of secondary service connection and does not address the Veteran’s contention that the onset of the condition occurred during active service. Given this pre-decisional duty to assist error, a new opinion is necessary to determine the nature and etiology of the Veteran’s cervical spine condition. 

These matters are REMANDED for the following actions:

1. Obtain an opinion from an appropriate clinician regarding the nature and etiology of the Veteran’s sleep apnea. The clinician is to review the virtual file, including a copy of this Remand and lay statements from the Veteran, his spouse, and a fellow servicemember. See 12/09/2015, Buddy/Lay Statement; 03/04/2017, Buddy/Lay Statement; 07/20/2018, Buddy/Lay Statement; 07/20/2018, VA 21-4138; 04/10/2019, Buddy/Lay Statement.

The clinician is to provide an opinion whether any current sleep apnea diagnosis is at least as likely as not (probability of 50 percent or more) related to service, to include whether the onset of the condition occurred during the Veteran’s period of active service. 

A comprehensive rationale for all opinions is to be provided. All pertinent evidence, including both lay and medical, should be considered.

2. Obtain an opinion from an appropriate clinician regarding the nature and etiology of the Veteran’s cervical spine condition. The clinician is to review the virtual file, including a copy of this Remand and lay statements regarding the onset of the condition and subsequent circumstances of treatment. See 10/31/2018, VA 21-4138; 03/14/2019, VA 21-4138.

The clinician is to provide an opinion whether any current cervical spine diagnosis is at least as likely as not (probability of 50 percent or more) related to service, to include whether the onset of the condition occurred during the Veteran’s period of active service. 

A comprehensive rationale for all opinions is to be provided. All pertinent evidence, including both lay and medical, should be considered. 

 

 

Jonathan Hager

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board David Han, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.