﻿Citation Nr: AXXXXXXXX
Decision Date: 01/31/19 Archive Date: 01/31/19

DOCKET NO. 181018-820
DATE: January 31, 2019

ORDER

Entitlement to a rating in excess of 10 percent for a right ankle disability is denied.

Entitlement to a rating in excess of 30 percent for insomnia disorder is denied.

FINDINGS OF FACT

1. During the appeal period, the Veteran’s right ankle disability has manifested in no more than moderate limitation of motion.

2. During the appeal period, the Veteran’s insomnia disorder has been primarily manifested by occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks.

CONCLUSIONS OF LAW

1. The criteria for a rating in excess of 10 percent for a right ankle disability have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.102, 4.3, 4.7, 4.10, 4.40, 4.45, 4.59, 4.71a; Diagnostic Code (DC) 5271 (2018).

2. The criteria for a rating in excess of 30 percent for insomnia disorder have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.102, 4.3, 4.7, 4.130; DC 9413 (2018).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from May 2000 to August 2000.

This appeal comes before the Board of Veterans’ Appeals (Board) from June 2017 and March 2018 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Roanoke, Virginia.

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Veteran chose to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. This decision has been written consistent with the new AMA framework.

Increased Rating

Disability evaluations are determined by the application of a schedule of ratings, which is based on average impairment of earning capacity caused by the given disability. Separate diagnostic codes identify the various disabilities. 38 U.S.C. § 1155; 38 C.F.R. § 4.27.

Where entitlement to compensation has already been established and increase in disability is at issue, the present level of disability is of primary concern. See Francisco v. Brown, 7 Vet. App. 55 (1994). When a question arises as to which of two ratings applies under a particular code, the higher rating is assigned if the disability more closely approximates the criteria for the higher rating. 38 C.F.R. § 4.7. Any reasonable doubt remaining, including regarding degree of disability, is to be resolved in favor of the Veteran. 38 U.S.C. § 5107; 38 C.F.R. §§ 3.102, 4.3.

Where entitlement to service connection has already been established and an increase in the disability ratings is at issue, it is the present level of disability that is of primary concern. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). However, staged ratings are appropriate for an increased rating claim if the factual findings show distinct time periods where the service-connected disability exhibited symptoms that would warrant different ratings. See Hart v. Mansfield, 21 Vet. App. 505 (2007).

1. Increased rating for a right ankle disability in excess of 10 percent disabling is denied.

The Veteran is service-connected for residuals of right ankle fracture, currently rated at 10 percent under DC 5271. Under DC 5271, a rating of 10 percent is warranted when limitation of motion of the ankle is moderate. The maximum rating of 20 percent disabling is available under DC 5271 where the limitation of motion in the ankle is marked.

The words “moderate” and “marked,” as used in the various Diagnostic Codes, are not defined in the VA Schedule for Rating Disabilities. Rather than applying a mechanical formula, the Board must evaluate all of the evidence for “equitable and just decisions.” 38 C.F.R. § 4.6.

When evaluating loss in range of motion, consideration is given to the degree of functional loss caused by pain. DeLuca v. Brown, 8 Vet. App. 202 (1995) (evaluation of musculoskeletal disorders rated on the basis of limitation of motion requires consideration of functional losses due to pain). In DeLuca, the Court explained that, when the pertinent diagnostic criteria provide for a rating on the basis of loss of range of motion, determinations regarding functional losses are to be “‘portray[ed]’ (38 C.F.R. § 4.40) in terms of the degree of additional range-of-motion loss due to pain on use or during flare-ups.” Id. at 206.

After a review of the evidence of record, the Board finds that the preponderance of the evidence is against the assignment of a rating in excess of 10 percent for the Veteran’s right ankle disability. As the Veteran has not provided any additional private treatment records regarding his right ankle, the most probative evidence of record are the May 2017 and September 2017 VA examinations. 

At the outset, the Board acknowledges the recent decision in Correia v. McDonald, 28 Vet. App. 158 (2016), which held that for an examination to be adequate it should include joint testing for pain on both active and passive motion, in weightbearing and non-weightbearing and, if possible, with range of motion measurements of the opposite undamaged joint. As noted, the Veteran was afforded two VA examinations. The September 2017 VA examination complies with Correia in that the examiner did test for pain in weightbearing and non-weightbearing modes, performed joint testing for pain on active and passive motion, recorded range of motion measurements of the opposite undamaged (left) joint, and tested for range of motion in repetitive mode with documentation of no further range of motion loss due to repetitive use. The Board has also considered whether the recent holding in Sharp v. Shulkin, 29 Vet. App. 26 (2017), which held that an examiner must provide an opinion regarding additional range of motion loss due to pain, would require a remand for a new VA examination. However, the Veteran specifically denied any flare-ups at the September 2017 VA examination. As such, a new examination to determine the effects of flare-ups when the Veteran specifically denied them is unnecessary. The Board notes that as this examination is the most recent and conforms to Correia and Sharp, it cures any defect which the Veteran’s first May 2017 examination may have had. Therefore, the examinations are adequate for appellate review.

The May 2017 VA examination revealed full range of motion of both dorsiflexion and plantar flexion. Pain was noted on examination. However, there was no evidence of pain with weight bearing and no evidence of crepitus. The Veteran was able to perform repetitive-use testing with at least three repetitions, with no additional loss of function or range of motion after three repetitions. There was no ankylosis. The Veteran reported flare-ups as increased severity of pain with exercise and running.

The September 2017 VA examination revealed plantar flexion limitation to no more than 25 degrees, which represents approximately a one-third reduction of full motion, and dorsiflexion limited to no more than 10 degrees, which represents a one-half reduction of full motion. Pain was noted on examination, with tenderness to medial aspect of right ankle. However, there was no evidence of pain with weight bearing and no evidence of crepitus. The Veteran was able to perform repetitive-use testing with at least three repetitions, with no additional loss of function or range of motion after three repetitions. There was objective evidence of pain on passive range of motion testing and objective evidence of pain when the joint is used in non-weight bearing. There was no ankylosis.

At the September 2017 VA examination, the Veteran denied having flare-ups. He stated that his functional loss was not being able to run longer than one mile. It was noted the Veteran is able to ambulate, and does not use any assistive devices. Finally, a May 2017 image of the right ankle revealed negative findings.

Upon consideration of the evidence delineated above, the Board finds no basis upon which to assign a rating greater than the currently assigned 10 percent, as the evidence fails to demonstrate “marked” limitation of motion at any point during the relevant time period. Although the rating criteria does not specifically define “moderate” or “marked” limitation of motion, the Board finds that being able to achieve equal to or greater than one-half of full motion, even taking the Veteran’s complaints of pain into consideration, does not represent “marked” limitation of motion. Additionally, even upon consideration of functional loss of inability to run for more than one mile, the Veteran is not so limited by pain that his movement is further decreased and he is able to ambulate. Accordingly, the Board finds no basis upon which to assign a rating greater than 10 percent under the criteria set forth in DC 5271. 38 C.F.R. § 4.71a, DC 5271.

The Board notes that the Veteran is credible to the extent that he believes he is entitled to a higher rating for his disability. This lay evidence, however, is outweighed by competent and credible medical evidence that evaluates the true extent of the impairment based on objective data coupled with the lay complaints.

The Board has also considered whether the Veteran may be entitled to a higher rating under any other applicable rating criteria. However, there is no evidence of ankylosis of the ankle or subastragalar or tarsal joint to allow for application of DC 5270 or 5273. Further, the evidence of record does not demonstrate malunion of the calcaneus or talus, and there is no indication that the Veteran had undergone a talectomy (an astragalectomy). Accordingly, the Board finds that the evidence does not support a rating under DCs 5273 or 5274.

In finding that an evaluation in excess of 10 percent is not warranted for the Veteran’s right ankle disability, the Board has considered the doctrine of reasonable doubt, but finds that the record does not provide an approximate balance of negative and positive evidence on the merits. The Board is unable to identify a reasonable basis for granting a rating greater than that already assigned at any point during the relevant time period under any applicable DC. 38 U.S.C. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49, 57-58 (1990); 38 C.F.R. § 3.102 (2017).

2. Increased rating for insomnia disorder in excess of 30 percent disabling

The Veteran is service-connected for insomnia disorder, currently rated at 30 percent under DC 9413. Under DC 9413, a 30 percent rating requires: Occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, mild memory loss (such as forgetting names, directions, or recent events).

A 50 percent disability rating requires: Occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships.

The preponderance of the evidence is against the assignment of a rating in excess of 30 percent for the Veteran’s insomnia disorder. As the Veteran has not provided any additional private treatment records regarding his insomnia, the most probative evidence of record is the February 2018 VA examination.

The February 2018 VA examination noted that the Veteran’s only mental disorder diagnosis is unspecified insomnia disorder. The examiner determined that the Veteran’s insomnia caused occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress, or; symptoms controlled by continuous medication. The Veteran reported work-related problems due to lack of sleep which in turn impact his productivity at work. He reported an average of four to five hours of sleep with difficulty maintaining sleep due to pain in his right leg.

The Board finds that the evidence for the entire appeal period demonstrates that the Veteran’s insomnia disorder is not productive of occupational and social impairment with reduced reliability and productivity. The Veteran worked full-time during part of the appeal period; his work difficulties appear to have been limited to sleep deprivation and stress due to work demands. Thus, they do not support a finding of reduced reliability and productivity manifested by difficulty in understanding complex commands, impairment of short- and long-term memory, impaired judgment, or impaired abstract thinking. The Veteran reported that he was terminated from his job in May 2018, but has not alleged, nor does the evidence show, that he has a reduced ability to perform all occupational tasks due to his sleep deprivation. The Board finds that this shows no more than occasional occupational impairment.

In looking to social impairment, the Veteran only noted that he does not socialize much due to his work schedule and lack of sleep. The Board acknowledges the Veteran’s statements, but he has not alleged, nor does the evidence show, more than minimal social impairment. In addition, nothing in the record or the Veteran’s allegations suggest flattened affect, speech problems, or panic attacks. The Board acknowledges that the Veteran reported energy and irritability due to sleep problems; however, the overall symptoms of the Veteran’s disability are most accurately depicted in the currently assigned disability rating. 

The Board notes that the Veteran is credible to the extent that he believes he is entitled to a higher rating for his disability. This lay evidence, however, is outweighed by competent and credible medical evidence that evaluates the true extent of the impairment based on objective data coupled with the lay complaints.

In finding that an evaluation greater than 30 percent is not warranted for the Veteran’s insomnia, the Board has considered the doctrine of reasonable doubt, but finds that the record does not provide an approximate balance of negative and positive evidence on the merits. The Board is unable to identify a reasonable basis for granting a rating greater than that already assigned at any point during the relevant time period under any applicable DC. 38 U.S.C. § 5107 (b); Gilbert v. Derwinski, 1 Vet. App. 49, 57-58 (1990); 38 C.F.R. § 3.102 (2017).

 

E. I. VELEZ

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD I. Kerner, Associate Counsel