﻿Citation Nr: AXXXXXXXX
Decision Date: 08/29/19 Archive Date: 08/29/19

DOCKET NO. 190125-2616
DATE: August 29, 2019

ORDER

Service connection for a right knee disability is denied.

A rating in excess of 70 percent for posttraumatic stress disorder (PTSD) is denied.

FINDINGS OF FACT

1. The Veteran’s right knee disability, to include right knee torn medial meniscus with degenerative changes, did not have onset in service or to a compensable degree within one year of service, and is otherwise unrelated to service.

2. The Veteran’s PTSD has manifested with symptoms that cause occupational and social impairment with deficiencies in most areas, but not total occupational and social impairment.

CONCLUSIONS OF LAW

1. The criteria for service connection for a right knee disability have not been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

2. The criteria for a rating in excess of 70 percent for PTSD have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.159, 3.321, 4.1, 4.3, 4.7, 4.130, Diagnostic Code (DC) 9411.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Board notes that the rating decisions on appeal were issued in September 2016 and in April 2017. In June 2018, the Veteran elected the modernized review system. 84 Fed. Reg. 138, 177 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 19.2(d)).

The Veteran served on active duty from September 1979 to July 1982 and from February 2003 to June 2004, with additional Reserve service.

The Veteran selected the Supplemental Claim lane when she opted in to the Appeals Modernization Act (AMA) review system by submitting a Rapid Appeals Modernization Program (RAMP) election form. As such, the record closed within 30 days from the date of the Veteran’s election on June 12, 2018, to submit additional evidence or notify VA of any outstanding evidence. There was no additional evidence submitted or any correspondence received by VA within the 30 days. The Veteran then timely appealed a January 2019 AMA rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ).

Evidence was added to the claims file during a period of time when new evidence was not allowed. Therefore, the Board may not consider this evidence. 84 Fed. Reg. 138, 182 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 20.300). The Veteran may file a Supplemental Claim and submit or identify this evidence. 84 Fed. Reg. 138, 182 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 3.2501).

In the January 2019 AMA decision, the AOJ found that new and relevant evidence was submitted to warrant readjudicating the claim for service connection for right knee pain and motion (recharacterized as a right knee disability). The Board is bound by this favorable finding. 84 Fed. Reg. 138, 167 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 3.104(c)).

1. Entitlement to service connection for a right knee disability.

The AOJ found that the Veteran has a current diagnosis of right knee pain, tenderness, and torn right knee medial meniscus with degenerative changes.

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated during active service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303(a). Active military service includes any period of ACDUTRA during which the individual concerned was disabled from a disease or injury incurred or aggravated in line of duty and any period of inactive duty training (INACDUTRA) during which the individual concerned was disabled from an injury incurred or aggravated in line of duty. 38 U.S.C. § 101 (24); 38 C.F.R. § 3.6 (a). ACDUTRA is full-time duty in the Armed Forces performed by Reserves for training purposes. 38 U.S.C. § 101 (22); 38 C.F.R. § 3.6 (c). INACDUTRA is duty other than full-time duty prescribed for Reserves. 38 U.S.C. § 101 (23); 38 C.F.R. § 3.6 (d). 

Pursuant to 38 C.F.R. § 3.303(b), where a chronic disease is shown as such in service, subsequent manifestations of the same chronic disease are generally service connected. If a chronic disease is noted in service but chronicity in service is not adequately supported, a showing of continuity of symptomatology after separation is required. See 38 C.F.R. §§ 3.303(b), 3.309(a); Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

The Veteran asserts that her right knee disability was due to jumping on and off big trucks and from washing 99 trucks with trailers and heavy equipment trucks, while stationed in Iraq. She avers that she did not realize she tore her right knee meniscus after returning from Iraq and began running. See March 2013 VA Form 21-4138, Statement in Support of Claim; October 2016 notice of disagreement. 

Her Form DD 214 reflects service in Iraq from April 2003 to April 2004, and her military occupational specialty (MOS) was motor transport operator. The Veteran’s report of jumping off trucks is generally consistent with the place, types, and circumstances of her service.

As the AOD already found a current disability exists, and the Veteran credibly reports jumping from trucks while on active duty, the first and second elements of service connection have been met. Therefore, the question in this case is whether a causal relationship exists between the Veteran’s right knee disability and active service.

After review of the record, the Board finds that the remaining element, a causal relationship, has not been met. The evidence of record does not show that a nexus exists.

The October 2003 and April 2004 post-employment health assessment forms noted reports of muscle aches, but was silent for a right knee disability. An April 2004 Report of Medical Assessment (RMA) showed that she marked “no” to whether she suffered any injury or illness while on active duty but not seek medical care.

A private treatment record dated in July 2005 shows that she was seen after service for complaints of right knee pain. At that time, the Veteran reported her symptoms started one year prior and she thought it was a sprain. She reported repeatedly jumping off a military truck, while stationed in Iraq. She noticed that her right knee hurt when she ran and thought her pain would go away. Her knee pain came and went. Her right knee was found to be tender along the medial joint line with palpation, but the clinician did not provide a diagnosis for a right knee disability. Instead, she was referred to another provider.

In August 2005, she was diagnosed with complex tear of the right knee medial meniscus by magnetic resonance imaging (MRI). Thereafter, another clinician (Dr. R.S.) issued a ‘work and medical certificate’ for medial meniscus tear (MMT), and noted the date of injury as late July 2005. An undated physical profile form shows that she was limited to performing only sedentary work, with an expiration date of November 2005. A review of her personnel record showed that she was not on INACDUTRA or ACDUTRA in late July 2005.

Subsequently, Dr. K.S. noted in a May 2006 treatment record that the Veteran has torn meniscus of the right knee, as per Dr. R.S. An etiology opinion is not of record.

In November 2010, the Veteran established care at her local VA medical center (VAMC). She reported other conditions, but not for right knee pain. A January 2011 Posttraumatic Stress Disorder Clinical Team (PCT) initial assessment record showed a medical history of ‘torn meniscus R knee, while on active duty.’ The AOJ’s favorable finding is based on a diagnosis made in July 2014. A September 2014 MRI report showed that she had right knee strain of the ligament and no tear, but degeneration was present.

Based on the foregoing, the Board finds that service connection is not warranted. The competent and probative evidence does not show that a right knee disability was incurred during service. The two post-deployment health assessment forms do not reflect complaints of right knee pain. She marked “no” to any unreported injuries or illnesses on her April 2004 RMA, which was after her deployment to Iraq. The earliest evidence of a complaint of right knee pain was not until July 2005, which is more than one year after active service. Although the Veteran currently reports knee pain began during active service, the ‘work and medical certificate’ indicated onset of her MMT injury was in late July of 2005, which was not during a period of active service. While the Board has considered the January 2011 VA PCT assessment record that reflected a right knee torn meniscus occurred while on active duty, that notation appears to be no more than a recitation of history provided by the Veteran. Moreover, there is no clinical evaluation or opinion accompanying that notation, which is expected as this history was being reported in connection with a psychiatric evaluation.

The only favorable nexus evidence comes from the Veteran herself. However, the question of whether the Veteran sustained a complex tear of the right knee medial meniscus with degenerative changes in service or, whether this disability is etiologically related to service, is medically complex. That is, it requires that the opining individual possess medical education, training, and expertise. These are qualifications that the Veteran, as a layperson, is not shown to possess in this case. Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). As such, her lay opinion is not competent to establish causal nexus.

The Veteran has not been afforded with a medical examination in connection with this claim. However, right knee pain was not initially reported until July 2005, which is more than one year after service and the current objective evidence (i.e. the ‘work and medical certificate’) placed onset of an MMT injury after service. There has been no probative medical evidence provided in support of a causal nexus to service. In the absence of any competent, credible evidence suggesting a possible association with service, VA is not required to further develop the claim by affording the Veteran a VA examination or by obtaining a medical opinion. See McLendon v. Nicholson, 20 Vet. App. 79, 81 (2006); Waters v. Shinseki, 601 F.3d 1274, 1278-79 (Fed. Cir. 2010).

Finally, there was no diagnosis of a chronic disease during service or within one year of discharge. The earliest evidence of degenerative changes, though not arthritis, was not until 2014, as diagnosed by MRI. As such, service connection may not be presumed as a chronic disease. 38 C.F.R. §§ 3.303, 3.307, 3.309; Walker, 708 F.3d at 1331.

In sum, the Board finds that the Veteran’s right knee disability is not shown to be causally or etiologically related to any disease, injury, or incident during service. Consequently, service connection for a right knee disability is not warranted. The preponderance of the evidence is against the claim of entitlement to service connection for a right knee disability and the claim must be denied. 38 U.S.C. § 5107; 38 C.F.R. § 3.102.

2. Entitlement to a rating in excess of 70 percent for PTSD from November 22, 2016 to January 4, 2019.

In an April 2017 rating decision, the Veteran’s PTSD was granted a 70 percent evaluation, pursuant to 38 C.F.R. § 4.130, DC 9411. The rating was made effective from October 11, 2016.

The AOJ did not provide any favorable findings for the Veteran’s PTSD in the January 2019 AMA rating decision.

Disability ratings are determined by applying a schedule of reductions in earning capacity from specific injuries or a combination of injuries that is based upon the average impairment of earning capacities. 38 U.S.C. § 1155. Each disability must be viewed in relation to its entire history, with emphasis upon the limitations proportionate to the severity of the disabling condition. 38 C.F.R. § 4.1. When rating the Veteran’s service-connected disability, the entire medical history must be reviewed. Schafrath v. Derwinski, 1 Vet. App. 589 (1991). The Board must also fully consider the lay assertions of record. See Layno v. Brown, 6 Vet. App. 465, 470 (1994). 

Where there is a question as to which of the two disability evaluations is applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. After careful consideration of the evidence of record, any reasonable doubt remaining will be resolved in favor of the Veteran. 38 C.F.R. § 4.3. Where service connection has already been established and an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. Francisco v. Brown, 7 Vet. App. 55 (1994). The Board acknowledges that multiple distinct degrees of disability might be experienced which result in different compensation levels from the time the increased rating claim was filed until a final decision is made. Staged ratings apply to both initial and increased rating claims. See Hart v. Mansfield, 21 Vet. App. 505, 509-10 (2007).

Under the General Rating Formula for Mental Disorders, a 70 percent rating is warranted where objective evidence demonstrates occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); inability to establish and maintain effective relationships. Id.

The criteria for a 100 percent rating include a non-exhaustive list of symptoms reflective of a total occupational and social impairment. A 100 percent evaluation is warranted for total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent ability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. Id.

For the reasons that follow, the Board finds that a higher rating is not warranted. The evidence has not shown the Veteran’s PTSD symptoms result in total occupational and social impairment.

At the February 2017 VA contract examination, the Veteran reported getting along very well with her siblings. She also reported speaking with friends daily, but not socializing with them, as she spent most of her time at home. The examiner found that she had depressed mood, anxiety, suspiciousness, panic attacks more than once a week, chronic sleep impairment, mild memory loss, difficulty in understanding complex commands, disturbances of motivation and mood, difficulty in establishing and maintaining effective work and social relationships, difficulty in adapting to stressful circumstances, including work or a work-like setting, obsessional rituals which interfere with routine activities, and intermittent inability to perform activities of daily living. The Veteran was pleasant and cooperative, appeared anxious with frequent psychomotor agitation, and sometimes appeared confused by the questions. She reported having suicidal ideation if she did not take her medications, but had only one past active suicidal ideation. The examiner found that her PTSD symptoms cause occupational and social impairment with reduced reliability and productivity.

VA treatment records during the appeal period indicate that the Veteran was found to be casually dressed and appropriately groomed. She consistently reported feeling stressed and intermittently reported nightmares on a daily basis. She stayed in touch with a younger sibling and a veteran friend. She cared for a cat. She was oriented to person, place, and time. Her thought process was linear and she had normal speech. The Veteran’s mood was ‘okay,’ and she displayed a euthymic affect. She had adequate insight and judgment. The clinicians found no evidence of hallucinations or delusions. The Veteran denied thoughts of suicidal or homicidal ideation.

Given above, the Board finds that a rating higher than 70 percent is not warranted. The Veteran’s PTSD manifests with symptoms consistent with the current 70 percent rating, and have been moderate to moderately severe overall.

A higher rating of 100 percent requires more severe symptoms similar to those enumerated in the rating criteria, such as gross impairment in thought process, persistent delusions, disorientation to time or place, inability to recall one’s own or names of close family members, being a persistent danger to self or others, or inability to perform activities of daily living. A review of the record has not shown the Veteran’s PTSD symptom manifest with the frequency and severity that is contemplated by a total rating.

The 2017 VA contract examiner opined that the Veteran’s PTSD symptoms cause no more than occupational and social impairment with reduced reliability and productivity. This assessment suggests moderate impairment, and certainly not total impairment from PTSD. This opinion is probative, as it was provided by a psychologist and was based on a clinical examination and record review. Further, the evidence shows the Veteran is not totally impaired in her social functioning. The VA treatment records and the 2017 examination report indicated that she is able to maintain a relationship with her siblings and veteran friend. She is able to care for a pet cat. Moreover, she is able to keep up with her hygiene, as her VA medical visits indicated that she generally presented as casually dressed and appropriately groomed. Further, she had normal speech and has been oriented to person, time, and place throughout the period on appeal. Her mood has been okay with euthymic affect. The medical record during this period reflected denials of delusions, hallucinations, and suicidal or homicidal ideations. The Board has considered her report of having suicidal ideation if she does not take her medications; however, the cumulative evidence does not reflect the frequency or severity present to warrant a higher rating such as suicidal ideation so severe that she is a persistent danger to herself. 

(Continued on the next page)

 

Given the nature, frequency and severity of the Veteran’s PTSD symptoms as shown by the cumulative evidentiary record, the Board finds that her level of functioning does not more nearly approximate total occupational and social impairment. As the preponderance of the evidence is against the claim for a rating in excess of 70 percent for PTSD, the benefit of the doubt rule does not apply. 38 U.S.C. § 5107; 38 C.F.R. § 4.3. The claim is denied.

There are no additional expressly or reasonably raised issues presented on the record.

 

 

D. JOHNSON

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board M. Tang, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.