﻿Citation Nr: AXXXXXXXX
Decision Date: 01/29/21 Archive Date: 01/29/21

DOCKET NO. 200224-66794
DATE: January 29, 2021

ORDER

Entitlement to an initial rating of 70 percent, but no higher, prior to January 9, 2014, for posttraumatic stress disorder (PTSD) is granted.

Entitlement to an initial rating in excess of 70 percent since January 9, 2014, for PTSD is denied. 

Entitlement to total disability rating based on individual unemployability (TDIU) prior to January 9, 2014, is granted.

FINDINGS OF FACT

1. For the entire appeal period, the Veteran’s PTSD is most appropriately characterized by occupational and social impairment with deficiencies in most areas.

2. From April 27, 2012, the Veteran’s CAD has precluded him from securing or following a substantially gainful occupation.

CONCLUSIONS OF LAW

1. Prior to January 9, 2014, the criteria for an evaluation in excess of 70 percent, but no higher, for PTSD have been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107(b); 38 C.F.R. §§ 3.102, 3.159, 4.1-4.7, 4.10, 4.126, 4.130, Diagnostic Code 9411.

2. For the entire appeal period, the criteria for an evaluation in excess of 70 percent for PTSD have not been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107(b); 38 C.F.R. §§ 3.102, 3.159, 4.1-4.7, 4.10, 4.126, 4.130, Diagnostic Code 9411.

3. From April 27, 2012, the criteria for entitlement to TDIU have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.340, 3.341, 4.3, 4.16.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105, also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with the Department of Veterans Affairs’ (VA’s) decision on their claim to seek review. The Board is honoring the Veteran’s choice to participate in VA’s test program, RAMP, the Rapid Appeals Modernization Program.

The Veteran had active duty service from September 1966 to September 1968. The Veteran selected the Higher-Level Review lane when he submitted the RAMP election form in September 2018. Accordingly, the March 2019 RAMP rating decision considered the evidence of record as of the date VA received the RAMP election form. In a VA Form 10182 (Decision Review Request: Board Appeal (Notice of Disagreement)) dated and received in February 2020, the Veteran elected the AMA modernized review system, requesting the option for direct review by a Veterans Law Judge with the Board of Veterans’ Appeal (Board) (placing the case on the Board’s Direct Review docket). 

The Board has re-characterized the Veteran’s separate claims for an earlier effective date and an increased rating for his PTSD as one claim for an increased rating. These claims are entirely overlapping as the Veteran contends that evidence supports an initial 70 percent evaluation for his PTSD from April 27, 2012, the date service connection for PTSD was granted. See February 2020 notice of disagreement. The adjudication of the increased rating claim will encompass all effective date concerns.

1. Entitlement to an initial rating in excess of 30 percent prior to January 9, 2014 and in excess of 70 percent thereafter for PTSD.

Disability evaluations are determined by comparing a Veteran’s present symptomatology with criteria set forth in the Department of Veterans Affairs (VA) Schedule for Rating Disabilities (Rating Schedule), which is based on average impairment in earning capacity. 38 U.S.C. § 1155; 38 C.F.R. Part 4. When a question arises as to which of two ratings apply under a particular diagnostic code, the higher evaluation is assigned if the disability more closely approximates the criteria for the higher rating. 38 C.F.R. § 4.7. After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the Veteran. 38 C.F.R. § 4.3. The Veteran’s entire history is reviewed when making disability evaluations. See generally, 38 C.F.R. § 4.1; Schafrath v. Derwinski, 1 Vet. App. 589 (1995). 

Where the veteran is appealing the rating for an already established service-connected condition, his present level of disability is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). However, when an appeal is based on the assignment of an initial rating for a disability, following an initial award of service connection for this disability, the rule articulated in Francisco does not apply. Fenderson v. West, 12 Vet. App. 119 (1999). Staged ratings are appropriate for an increased-rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. Hart v. Mansfield, 21 Vet. App. 505 (2007).

The regulations for rating mental disorders are found in 38 C.F.R. §§ 4.125-4.130. The Board notes that PTSD is evaluated under Diagnostic Code 9411 which is rated according to the General Rating Formula for Mental Disorders. 

A 30 percent rating is assigned when there is occupational and social impairment with occasional decrease in work efficiency and intermittent periods of the inability to be able to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: a depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, and mild memory loss (such as forgetting names, directions, recent events

A 50 percent rating is provided for occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships.

A 70 percent rating is provided for occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: Suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); inability to establish and maintain effective relationships. 

A 100 percent rating is provided for total occupational and social impairment, due to such symptoms as: Gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. 38 C.F.R. §§ 4.125-4.130.

Turning to the evidence of record, the Veteran was granted service connection for his PTSD, effective April 27, 2012. 

In June 2013, the Veteran underwent a VA examination for PTSD. He was diagnosed with PTSD that met the DSM-V criteria. He reported spending his free time with his wife watching his grandchildren and caring for his mother-in-law. He noted that his irritability and agitation caused him to become angry easily. His anger did not lead to violence or markedly inappropriate behavior but caused general abrasiveness towards his family. He worked for the Bureau of Prisons for 25 years with numerous promotions and worked for a private contracting firm after retiring from the Bureau of Prisons; however, he was currently retired. He indicated that anger and irritability mildly impacted his relationships with coworkers. Upon review of the Veteran’s treatment records, there was no treatment directly related to a psychiatric disorder. His symptoms included anxiety, suspiciousness, and chronic sleep impairment. The Veteran endorsed occasional mild short-term memory issues, such as difficulty remembering appointments, conversations, and tasks. He did not endorse problems with judgement, decision-making, orientation, visuospatial skills, prioritizing, and malaise. He endorsed depression, exaggerated startle response, and hypervigilance. He noted that his symptoms have been progressing over time. He denied suicidal ideation and psychotic symptoms. There was no evidence of delusions, hallucinations, or other psychotic symptoms. 

The Veteran arrived at his appointment on time, appropriately groomed, and was cooperative. Motor activity was normal. Mood was nervous and affect was mildly agitated. Thought process was linear. He denied suicidal and homicidal ideation, intent, or plan. His intelligence was normal, and his thoughts were appropriately abstract and fully oriented. Insight and judgement were appropriate. Memory skills in history-giving were intact. Cognitive functioning was normal. The Veteran was able to maintain activities of daily living, including personal hygiene, from a mental health perspective. There was no inappropriate behavior. The VA examiner found that the Veteran’s PTSD symptoms caused an occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress, or; symptoms controlled by medication.

VA treatment records show that the Veteran began outpatient mental health treatment in December 2013 by participating in a weekly psychotherapy group.

A January 2014 VA mental health note indicated that the Veteran’s PTSD symptoms included avoidance, arousal, re-experiencing, and depression. Upon examination, the Veteran was attentive, oriented in all spheres, and grooming was appropriate. Speech was normal. Mood was anxious. Affect was congruent with mood. He denied perceptual disturbances. Though processes were normal, coherent, and with no unusual thought content. He denied suicidal and homicidal ideation. He was instructed to continue with individual therapy and encouraged to continue to take medication as prescribed. 

In a statement received a week later in January 2014, a friend of the Veteran noted that he avoided crowds and public events, was withdrawn in social gatherings, and had a short temper with people that did not respect personal space. 

Also, in a statement received in January 2014, the Veteran noted that he was very agitated, very claustrophobic, irritable over nothing, very angry when confronted, felt that people would be better without him, depressed, daily flashbacks, jumpy with loud noises, not social, and had difficulty remembering important events and names of new acquaintances.

The Veteran’s daughter noted in a letter received in January 2014 that the Veteran was overwhelmed very easily, had memory loss, and avoided big crowds. In the same month, the Veteran’s wife noted that the Veteran had a very poor memory, isolated himself to his family and very close friends, was very irritable with his children and often had angry outbursts with them, he had nightmares, and was hypervigilant in public. The Veteran’s wife noted that he was able to maintain his job and social events. The Veteran’s son noted that his father was always easily agitated and angered over the small mistakes from his childhood until present. He was withdrawn in social settings. He would isolate and keep to himself. 

In January 2014, the Veteran’s treating VA psychiatrist stated that the Veteran had chronic and intense PTSD symptoms. His diagnosis of PTSD was first recognized during his July 2013 VA examination. His symptoms included insomnia, irritability, anger, flashbacks, depression, decreased interest in activities, passive suicidal ideation, and hypervigilance. Also, he had deficiencies with judgement, thinking, mood, and family relations. The VA psychologist found that the Veteran’s PTSD symptoms resulted in considerable occupational and social impairment. 

In a July 2016 letter, a VA psychologist opined that it was highly likely that the Veteran continued to suffer from PTSD symptomatology due to active duty stressors. The VA psychiatrist reviewed the Veteran’s psychiatric history. He had a considerable social and occupational impairment from at least April 27, 2012. He opined that it was at least as likely as not that the Veteran’s PTSD symptoms produced deficiencies in most areas, such as work, family relationships, and mood since at least April 27, 2012. The Veteran’s symptoms included anxiety, hypervigilance, inability to relax, social unease, pressured thinking, claustrophobia, fleeting suicidal ideation, flashbacks, and nightmares. 

In September 2018, the Veteran underwent another VA examination for PTSD. He was diagnosed with PTSD. The VA examiner found that the Veteran’s PTSD have worsened over the past 5 years, especially his social withdraw, irritability, and sleep disturbance. The Veteran’s marriage had been adversely affected by his irritability and social withdraw. The Veteran’s anger management difficulties resulted in angry outbursts with others. The VA examiner found that the Veteran’s PTSD symptoms caused an occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking and/or mood. The Veteran had a functioning relationship with his wife, son, and daughter. He had no close friends. He had a positive relationship with his brother. The Veteran found the VA PTSD group program beneficial and has taken his prescribed medications to treat his PTSD symptoms. 

The Veteran’s PTSD symptoms included: depressed mood, anxiety, suspiciousness, panic attacks that occur weekly or less often, chronic sleep impairment, mild memory loss, impaired short-term and long-term memory, flattened affect, difficulty understanding complex commands, impaired judgement, impaired abstract thinking, gross impairment of thought processes or communication, grossly inappropriate behavior, difficulty in establishing and maintaining effective work and social relationships, and difficulty in adapting to stressful circumstances, including work or a work-like setting. The Veteran arrived at his appointment 15 minutes early. He was appropriately dressed for the interview. He displayed appropriate hygiene. He had a flattened affect. His speech and though processes were goal directed. He did not reflect the presence of confused thinking, loose associations, delusions, hallucinations, or other psychotic manifestations. The Veteran was polite, cooperative, and readily self discloses. The Veteran denied being an imminent threat of danger to himself or others. He denied a history of suicide attempts.

A September 2018 VA psychotherapy note indicated that the Veteran was in a pleasant mood. He stated that he was going to the harvest festival that weekend. He planned on going to Denver, Colorado to see his grandchildren. He denied suicidal ideation and intent. Based on the clinical assessment, there was no clinical indication of imminent risk of self or others. The physician noted that there was a reduction in frequency and severity of symptoms. 

The Board finds that the evidence of record prior to January 9, 2014, is both for and against a higher rating. During this time, the Veteran was reported as having symptoms that range from mild and transient to causing deficiencies in most areas. However, the Board notes the July 2016 letter, where the VA psychologist concluded that the Veteran had considerable social and occupational impairment from at least April 27, 2012 and opined that it was at least as likely as not that the Veteran’s PTSD symptoms produced deficiencies in most areas, such as work, family relationships, and mood since at least April 27, 2012. Therefore, after resolving all reasonable doubt in favor of the Veteran, the Board finds that prior to January 9, 2014, a 70 percent rating is warranted for the Veteran’s PTSD. 

Additionally, based on the aforementioned lay and medical evidence, The Board finds that the Veteran’s symptoms do not warrant a rating in excess of 70 percent at any time during the period on appeal. A higher 100 percent rating is not warranted because at no time did the Veteran exhibit total occupational and social impairment, due to such symptoms as gross impairment in thought processes or communication; persistent delusions or hallucinations; persistent danger of hurting self or others; disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. He was noted not to have such symptoms nor were any other symptoms compatible with such an extreme lack of functioning shown, such as symptoms reflective of psychotic manifestations, severe cognitive dysfunction, or a basic inability to function. 

The Board acknowledges that the September 2018 VA examiner noted that the Veteran had grossly inappropriate behavior; however, the same examiner, as well as the September 2018 VA physician, found that the Veteran was not an imminent threat of danger to himself or others. The September 2018 VA examiner noted that the Veteran’s though processes were goal directed. He did not reflect the presence of confused thinking, loose associations, delusions, hallucinations, or other psychotic manifestations. The Veteran was polite, cooperative, and readily self discloses. Notably, the September 2018 VA examiner indicated that the Veteran had angry outburst and yelling matches with neighbors but has not had any legal problems over the past 5 years, nor been involved in violent contact with others. Therefore, the Board finds that the September 2018 VA examiner’s note on the Veteran’s grossly inappropriate behavior was not reflective of his symptomatology as a whole, especially since the evidence of record does not provide support for the assertion made. Notably, all VA examiners found that the Veteran was capable of managing his financial affairs. Further, he was maintaining relationships with his wife, children, and brother. Also, his thought processes were normal, his attention and concentration were adequate, and he was oriented in person, time, and place. Further, the nature and type of symptoms demonstrated do not result in total occupational and social impairment such that a 100 percent schedular evaluation would be warranted.

The Board recognizes that the Veteran had significant mental health symptoms for which he has received regular psychiatric treatment. Also, the Board is aware that the symptoms listed under the particular percentage evaluations are essentially examples of the type and degree of symptoms for those evaluations, and that the Veteran need not demonstrate those exact symptoms to warrant higher ratings. See Mauerhan, 16 Vet. App. at 436 (2002). In this case, however, based on the above, the preponderance of the evidence is against a rating of 100 percent.

Finally, the Board notes that in a February 2020 statement, the Veteran’s attorney raised a due process argument regarding perceived deficiencies in the March 2019 notification of the higher-level review (HLR) decision of March 2019, asserting that non-compliance with 38 U.S.C. § 5104 and 38 C.F.R. § 3.103 (f) has resulted in prejudice to the Veteran. He believes that the Veteran did not receive a proper notice that explains the procedure for obtaining review of the decision (and instead only gave the Veteran the options available and enclosed VA Form 20-0988). He also believes that the notice did not identify the issues adjudicated (or properly identify them); did not provide the requisite summary of the evidence (and instead only listed the documents considered, without a summary); did not provide a summary of the applicable laws and regulations (and instead only listed the applicable governing laws); did not identify findings favorable to the Veteran (favorable findings appeared on a copy of the rating decision that was enclosed with, but not included in, the notice letter); did not identify the elements not satisfied leading to the denial in the manner specified in the statute (denial elements were in the rating decision but not the notice itself); did not provide an explanation of how to obtain or access evidence used in making the decision; and did not identify the criteria that must be satisfied to grant a higher rating (and instead only listed criteria for a 70 percent rating). In short, he asserts deficiencies in every provision of 38 U.S.C. § 5104 (a) and (b).

The Board does not agree. The notice letter explained how the Veteran could appeal the HLR decision. The notice letter enclosed a copy of the HLR decision, stating that it and the HLR decision, together, constituted notification of the VA rating decision. The HLR decision contained all the elements required by statute and regulation. It appears the attorney interprets “summary” as an explanation of what is contained in each piece of evidence in the record and in each applicable law, rather than a listing of the evidence considered and the laws applied; a definition of “summary” is not contained in the statute. In any case, the relevant evidence is discussed within the HLR decision. From a reading of the March 2019 notice in conjunction with the March 2019 HLR decision, the issues that were adjudicated can be discerned. Further, the March 2019 HLR decision listed “none” for favor findings found for the Veteran’s increased PTSD rating claims. Where a claim was denied or not granted to the fullest extent, the VA explained the evidence resulting in the denial or the criteria necessary to obtain a higher rating. In the March 2019 notice letter, the Veteran was specifically informed of the different ways how he could either obtain or access evidence used in making the HLR decision. In short, the Board finds no due process deficiencies in the notification, as alleged, and no prejudice to the Veteran in these matters. Nor has the Veteran’s attorney, who has been a longtime advocate for veterans before the VA (the Board and CAVC, in particular), and thus is assumed to have an extensive knowledge of VA law and appellate procedures, provided any specific examples of how the Veteran in this case has been prejudiced by the March 2019 notice.

In determining whether a higher rating is warranted for service-connected disability, VA must determine whether the evidence supports the Veteran’s claim or is in relative equipoise, with the appellant prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case the claim is denied. 38 U.S.C. § 5107 (a); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). In this case, the Board has resolved all reasonable doubt in favor of the Veteran, as noted. As such, prior to January 9, 2014, a rating of 70 percent, but no higher, is warranted and since January 9, 2014, a rating in excess of 70 percent is not warranted. 

2. Entitlement to a TDIU prior to January 9, 2014.

The Veteran asserts that he is unemployable due to his service-connected PTSD.

The Veteran was granted entitlement to TDIU effective January 9, 2014, the date he first met the schedular requirement for entitlement. The Veteran is currently is in receipt of noncompensable ratings for maxillary sinusitis and right foot fracture 5th metatarsal. As a result of this decision, from April 27, 2012, the Veteran has a rating of 70 percent for PTSD. Thus, the Veteran meets the schedular from this date forward. 38 C.F.R. § 4.16(a).

Turning to the evidence of record, the Veteran indicated that he was unemployable due solely to his PTSD and that he was last employed as a full-time superintendent in February 2012. A November 2016 vocational assessor found that the Veteran had been unemployable since May 2012 due to his service-connected PTSD. 

Therefore, resolving all reasonable doubt in favor of the Veteran, the Board finds that the Veteran’s service-connected PTSD prevented him from securing substantially gainful employment since April 27, 2012, the effective date for the Veteran’s PTSD. 

Finally, VA has a well-established duty to maximize a claimant's benefits. See Buie v. Shinseki, 24 Vet. App. 242, 250 (2011). Here, as indicated above the Veteran is entitled to a TDIU due to his PTSD. However, he has not had any additional service-connected disabilities independently ratable at 60 percent at any time during the appeal period. Accordingly, he is not entitled to SMC at the housebound rate. 38 U.S.C. § 1114 (s); 38 C.F.R. § 3.350 (i).

Based on the foregoing, a TDIU is warranted from April 27, 2012.

 

 

D. SMART

Acting Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board J. Costello, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.